160

UNITED STATES of America,
Appellant,

v.

BALSAM CORPORATION,
et al., Appellee.

No. 4:97CV95JCH.

Bankruptcy Nos. 94–43104–293, 94–43242–293, 94–43243–293.

United States District Court,
E.D. Missouri,
Eastern Division.

Nov. 13, 1997.

Joel A. Kunin, Partner, Steven M. Wallace, Associate, Carr and Korein, Saint Louis, IL, for Balsam Corporation, debtor.

Richard W. Engel, Jr., Armstrong Teasdale, LLP, St. Louis, MO, Robert D. Metcalfe, U.S. Department of Justice, Office of Special Litigation, Tax Div., Washington, DC, for United States of America, appellant.

Richard W. Engel, Jr., J. Talbot Sant, Jr., Armstrong Teasdale, LLP, St. Louis, MO, for Procedo International Gesellschaft Fur Exportfactoring MBH, appellee.

David A. Warfield, Husch and Eppenberger, St. Louis, MO, for The Official Plan Committee, appellee.

Peter Lumaghi, U.S. Department of Justice, Office of Trustee, St. Louis, MO, Dana McWay, U.S. Bankruptcy Court, St. Louis, MO, for Peter Lumaghi, trustee.

## MEMORANDUM AND ORDER

HAMILTON, Chief Judge.

Pursuant to 28 U.S.C. § 158(a)(1), Appellant, United States of America, appeals from an order entered by the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division ("Bankruptcy Court") on December 5, 1996 denying Appellant's Motion for Allowance and Payment of Administrative Expenses. Appellant filed an opening brief on February 14, 1997. Appellee filed an opposition brief on March 24, 1997. Appellant filed a reply brief on April 7, 1997.

## BACKGROUND

On June 10, 1994, an involuntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Chapter 11"), was filed against Balsam Corporation with the Bankruptcy Court. Subsequently, Astroturf Industries, Inc. and Conica Corporation, subsidiaries of Balsam Corporation, filed voluntary petitions for relief under Chapter 11. On July 13, 1994, the Bankruptcy Court entered an order directing the joint administration of the bankruptcy cases of Balsam Corporation and its subsidiaries (the "Debtors").

On December 14, 1994, the Bankruptcy Court approved the Debtors' global settlement with Appellee, Procedo International Gesellschaft Fur Exportfactoring mbH ("Procedo"), which, *inter alia,* resolved over $220 million dollars in claims against the Debtors filed by Procedo. On that same date, the First Amended Plan of Reorganization, incorporating the terms of the Procedo settlement, was confirmed by the Bankruptcy Court.

On February 8, 1996, Procedo filed a Motion to Authorize Distribution under Confirmed Plan seeking distribution of a $2,487.514 tax refund received by Debtors on January 17, 1996. However, Appellant

reassessed the entire tax refund as tax liability on February 23, 1996. Thereafter, Appellant filed objections to the Motion to Authorize Distribution under Confirmed Plan, and a Motion for Allowance and Payment of Administrative Expenses which sought to recover the $2,487,514 in reassessed tax liability.

The Bankruptcy Court held a hearing on March 4, 1996 in order to determine the Motion to Authorize Distribution under Confirmed Plan. In an order entered on March 12, 1996, the Bankruptcy Court granted the Motion to Authorize Distribution under Confirmed Plan and scheduled a hearing on March 29, 1996, in order to determine the Motion for Allowance and Payment of Administrative Expenses. After the scheduled hearing, the Court denied Appellant's Motion for Allowance and Payment of Administrative Expenses in a December 5, 1996 order from which Appellant now appeals.

## LEGAL STANDARD

■ The Court has jurisdiction to hear appeals from final orders of the Bankruptcy Court. 28 U.S.C. § 158(a); *See e.g., In re Apex Oil Co.,* 884 F.2d 343, 346 (8th Cir.1989). The Court conducts a de novo review of the Bankruptcy Court's legal conclusions, *see e.g., In re Foust,* 52 F.3d 766, 768 (8th Cir.1995). However, the Court will not set aside the Bankruptcy Court's findings of fact unless they are clearly erroneous. *See e.g., Wegner v. Grunewaldt,* 821 F.2d 1317, 1320 (8th Cir. 1987).

## DISCUSSION[1]

A. *The Bankruptcy Court's application of 26 U.S.C. § 172(f)(1)(B)(ii) and § 172(b)(1)(C) to the facts adduced at the hearings*

■ The Bankruptcy Court denied Appellant's claim for administrative expenses

---

1. Appellant has stated thirteen (13) separate issues in the "Statement of Issues" section of its opening brief. Although the Court will not refer to each issue by number, it will address all relevant issues fully in the Discussion section of this opinion.

on two grounds. First, the Court concluded that Appellant's claim was not entitled to administrative expense priority under 11 U.S.C. § 503(b)(1)(B)(ii). Second, the Court determined that, even if Appellant was entitled to an administrative expense priority, its reassessment of the $2,487,514 in tax liability was improper because the Debtors were entitled to the subject refund under 26 U.S.C. § 172(f).

Because the Court will affirm the Bankruptcy Court's second ground for denying Appellant's claim for administrative expenses, the Court need not determine whether Appellant's claim was entitled to administrative expense priority under the applicable Chapter 11 provision. Instead, the Court will assume for purposes of this appeal that Appellant was entitled to administrative expense priority, and will address the merits of Appellant's claim for reassessed tax liability.

The Bankruptcy Court concluded that the Debtors were entitled to the subject tax refund under the ten-year carryback provision for specified liability losses. Specifically, the Bankruptcy Court found that the Debtor suffered a specified liability loss under 26 U.S.C. § 172(f)(1)(B)(ii) "arising out of a tort, [which arose] out of a series of actions (or failures to act) over an extended period of time a substantial portion of which occur[ed] at least 3 years before the beginning of the taxable year." *Id.* The Court will first determine whether the Bankruptcy Court's factual finding that the Debtors incurred a deferred tort loss under 26 U.S.C. § 172(f)(1)(B)(ii) was clearly erroneous.

This factual finding by the Bankruptcy Court contained the following preliminary factual findings essential to a finding of a specified liability loss under subsection (ii): (1) the liability incurred by the Debtors arose out of their tortious activity, and (2) the tortious activity occurred over an extended period of time a substantial portion of which occurred at least 3 years before the beginning of the tax year in which the loss occurred. (12/6/96 Order, at 15–19).

The Bankruptcy Court found that the Debtors incurred net losses in the 1994 tax year because of conduct by key management of the Debtors amounting to the tort of fraud which began no later than 1989. The Bankruptcy Court found as follows:

Orrick [, the President of Finance of Balsam Corporation,] and Brown[, the Vice President of Finance of Balsam Corporation,] ... knowingly relayed false financial information to the auditors. It is also clear that the auditors relied upon Brown and Orrick's representations of the Debtors' financial statements and, therefore, created financial statements which showed the Debtors as profitable entities.... The revenues Schlienkamp[, the former Treasurer of Balsam AG,] caused to be reported as proceeds ... were later determined to be falsely reported and, in fact, non-existent. Instead of a profitable entity, as reported, the Debtors were unprofitable for this period. Arthur Anderson annually disseminated 100 to 200 copies of the audited financial reports.... The unsecured creditors of Balsam Corporation will not receive full satisfaction of their allowed claims. Therefore, all of the requisite elements are present and the tort of fraud has been established.... In addition, when the IRS conducted its audit in 1995 of the 1994 tax return and first refund request, the revenue agents had determined at that time that at least a substantial portion of the subject losses were based upon the massive, international fraudulent scheme in which the Debtor had been embroiled during the subject time period. The evidence presented at the hearings and throughout these bankruptcy proceedings conclusively indicates that the losses incurred by the Debtors, ... resulted from the extensive tortious activity. The entire operation of the Debtors after 1988 was designed to continue the international scheme which came to light in the summer of 1994 and caused the collapse of the Debtors and their parent entity Balsam AG.... Finally, the Subject losses arose out of a series of actions

conducted over an extended period of time, at least five years. Tile evidence has shown that the tortious activity began in earnest no later than 1989, the same time when the false revenues began to be reported to the auditors. As a result a substantial portion of the tortious acts occurred at least three years prior to the beginning of the tax year in which the loss occurred, i.e. prior to January 1, 1991. (12/6/96 Order, at 17–18).

After a thorough review of the record in this case, the Court finds that the Bankruptcy Court's factual findings with respect to whether the Debtors suffered a specified liability loss under 26 U.S.C. § 172(f)(1)(B)(ii) were not clearly erroneous. As such, the Court will not disturb these factual findings in the instant appeal. *See e.g., Wegner,* 821 F.2d at 1320 (8th Cir.1987).[2]

Having found that the Debtors incurred a specified liability loss, the Bankruptcy Court concluded that the Debtors were entitled to the subject tax refund under 26 U.S.C. § 172(b)(1)(C) which provides as follows:

**Specified liability losses.**—In the case of a taxpayer which has a specified liability loss (as defined in subsection (f)) for a taxable year, such specified liability loss shall be a net operating loss carryback to each of the 10 taxable years preceding the taxable year of such loss.

*Id.* After de novo review, the Court determines that the Bankruptcy Court correctly applied 26 U.S.C. § 172(b)(1)(C) in arriving at the conclusion that the Debtors were entitled to the $2,487,514 tax refund it received on January 17, 1996. Because the Debtors were entitled to the subject

tax refund, the Bankruptcy Court correctly denied Appellant's Motion for Allowance and Payment of Administrative Expenses which sought to reassess the tax refund as tax liability.

*B. The Bankruptcy Court's evidentiary rulings*

■ Appellant argues that the Bankruptcy Court committed reversible error in admitting Procedo's Exhibits 1, 2, 3, 5, and 6 at the March 29, 1996 hearing. The Court notes that it will not set aside the Bankruptcy Court's evidentiary rulings unless the Bankruptcy Court clearly abused its discretion. *See e.g., In re Scarlata,* 127 B.R. 1004, 1012 (Bankr.N.D.Ill.1991). The Court, after reviewing the record of the March 29, 1996 hearing, concludes that the Bankruptcy Court did not clearly abuse its discretion in admitting Exhibits 1, 2, 3, 5, and 6.[3]

ACCORDINGLY.

**IT IS HEREBY ORDERED** that the Bankruptcy Court's order entered December 5, 1996 denying the United States of America's Motion for Allowance and Payment of Administrative Expenses is **AFFIRMED.** A Judgment will accompany this Memorandum and Order.

---

2. Furthermore, the Court agrees with the Bankruptcy Court's legal conclusion that the Debtors conduct amounted to the common-law tort of fraud. *See e.g., Paul v. Farmland Indus., Inc.,* 37 F.3d 1274 (8th Cir.1994) (summarizing the elements of a common-law tort action).

3. Moreover, even if the Bankruptcy Court clearly abused its discretion in admitting

these exhibits, such errors would not be reversible because there is other evidence in the record to support the Bankruptcy Court's factual findings, including, but not limited to Procedo's Exhibit 4 and Appellant's own exhibits at the March 29 hearing. *See e.g., Stephens, Inc. v. Geldermann, Inc.,* 962 F.2d 808, 812 (8th Cir.1992).