**CENTERRE BANK OF KANSAS CITY, NATIONAL ASSOCIATION,**
Respondent,

v.

**Darrell L. ANGLE, Appellant.**

No. WD 54942.

Missouri Court of Appeals, Western District.

Sept. 22, 1998.

---

James William Riner, Jefferson City, for appellant.

John Richard Shank, Jr., Kansas City, for respondent.

Before RIEDERER, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

The trial court entered an amended judgment on the jury's verdict in favor of Defendant Darrell Angle on Third–Party Plaintiffs Bill Bright and Frank Hunter's claim for fraud; in favor of Bright and Hunter and against Angle on their claim for breach of fiduciary duty; and in favor of Bright and Hunter and against Angle on Angle's cross-claim for libel. The trial court also accepted and adopted the Master's report as the basis for the accounting requested under Count V of Plaintiffs' Third Amended Cross–Claim and determined that as to Count III of the Third Amended Cross–Claim, requesting contribution, that Angle owes Hunter $38,-879.34 and Bright owes Hunter $2,247.43.

Dr. Angle appeals. He claims the trial court erred: 1) in allowing Bright and Hunter to assert claims against him for breach of fiduciary duty, because, as individual shareholders of Angle & Associates, they cannot maintain a personal claim against him as an officer or director for improper diversion of corporate assets, but rather must sue derivatively; 2) in the wording of the verdict-di-

recting instructions pertaining to plaintiffs' claims for breach of fiduciary duty because it was a roving commission in that it allowed the jury to find against him for breach of the partnership agreement, not a corporate agreement, and for other reasons; 3) in denying his motion for directed verdict on the action for accounting because it was barred by the statute of limitations; 4) in determining the date of dissolution of the partnership and the date for reconciling the partnership accounts; 5) in failing to attribute value to a partnership asset; 6) in admitting the Amended Master's Report into evidence and passing it to the jury; and 7) in not permitting him to advise the jury of the amount of the trial court's judgment against him on Count III for contribution. We affirm all of the trial court's findings as to Angle's liability to the partnership and all rulings as to the accounting, but reverse and remand for a new trial on Bright and Hunter's claim against Angle as an officer and director of the corporation for breach of fiduciary duty.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1985, Dr. Darrell Angle, D.D.S., sought out Bill Bright and Frank Hunter as potential investors in his concept of a multi-office dental practice. He told them he wanted to become "the Joel Hyatt of Dentistry." Angle, Bright, and Hunter formed ABH Investments ("ABH"), a Missouri general partnership, with each partner contributing $1,000.00 to start the partnership. The partnership was to borrow capital and to buy or lease real and personal property. The property would then be leased by ABH to a corporation known as Angle & Associates, Inc., for use in providing dental services. Angle & Associates was a general business corporation formed to engage in the practice of dentistry through Angle. Angle obtained ownership of 500 shares of stock in the corporation, Bright and Hunter 225 shares of stock and ABH 1200 shares of stock. Angle was President of the corporation, Bright was Treasurer, and Hunter was an officer. Angle also became an employee of the corpora-

tion and received a salary for his work as a dentist.

The ABH partnership entered into a number of leases and financial transactions in pursuit of the partners' financial goals. Angle, Bright, and Hunter borrowed $50,000.00 on behalf of ABH from Centerre Bank on March 27, 1986.[1] ABH used this money to acquire an interest in Spelman "A", Ltd., a limited partnership in a medical park office facility, to lease office space from Spelman "A", Ltd., and to make improvements to the leased space. This space was then subleased to Angle & Associates, Inc., and used as dental offices.

In March 1986, the Missouri Dental Board began investigating Angle for violating a prohibition against dentists practicing with non-dentists. In April 1986, Angle was advised by the Board that he could not practice dentistry through a general business corporation or through any corporation in which non-dentists were shareholders. As a result, in September 1986, Angle sent Bright and Hunter notice he was withdrawing from the ABH partnership.

After sending this letter, Angle continued to practice dentistry in the Spelman office, as well as in his original office in Gladstone, until November 1986. At that point, Bright and Hunter took possession of the Spelman location and changed the locks. They also took possession of the office computer and printouts, which they claimed showed Angle had collected approximately $45,000.00 after he "withdrew" from the partnership for work done while a member of the partnership, but that he had never accounted for that money to them. They also claimed Angle had removed many of the assets of the partnership and that he later sold the practice and these assets to another dentist for $160,000.00.

Angle claimed that any money received by him for services provided prior to September 1, 1986, he deposited to the account of Angle & Associates, Inc., and any money received for services performed by him after September 1, 1986, he kept. Angle stopped practic-

1. Bill Bright's wife, Kaye, and Frank Hunter's wife, Mary, executed a guaranty of the note and were part of the original suit against Angle.

However, these claims were later dismissed and are not involved in this appeal.

ing dentistry in Missouri in the latter part of 1986 and moved to Oregon. He did sell his Missouri practice to another dentist for $160,000 and purchased another dental practice in Oregon.

This lawsuit arose out of a 1988 suit brought against Bright, Hunter and Angle by Centerre Bank for default on the $50,000 note securing the "Spelman A" lease and office. Bright and Hunter cross-claimed against Angle for fraudulent misrepresentation, as well as for breach of fiduciary duty, contribution and indemnification. Centerre Bank took judgment against all defendants. Bright and Hunter later satisfied the judgment and proceeded on their cross-claim against Angle for contribution. The cross-claim was tried in a bench trial before the Honorable Ward B. Stuckey in Platte County, Missouri, in 1991. The judge awarded Bright and Hunter judgment against Angle in excess of $250,000.00, finding that Angle had made misrepresentations and had breached his fiduciary duty to Bright and Hunter. This Court reversed the judgment and remanded the case because no accounting of the partnership assets had been made, as required under Missouri law, before contribution could be obtained under the partnership agreement. *Bright v. Angle,* 833 S.W.2d 12 (Mo.App.1992).

After remand, Bright and Hunter filed an amended cross-claim against Angle, in which they specifically requested an accounting. A Master was appointed to perform the accounting of the partnership assets. The case was tried to a jury on remand before the Honorable Owens Lee Hull in Platte County, in 1995. Judge Hull entered a directed verdict in favor of Bright and Hunter on Count III for contribution, and submitted counts for fraud and breach of fiduciary duty to the jury. As noted above, the jury returned verdicts in favor of Angle on Count I, for fraud, and in favor of Bright and Hunter on Count II, for breach of fiduciary duty of Angle as an officer of the corporation. The court adopted the Master's amended report, but did not specifically enter judgment on the Master's findings.

In December 1995, Bright and Hunter filed a motion for an order directing payment of funds that had been subject to attachment and paid into court. Angle filed an application for a writ of prohibition, asking that Judge Hull be prohibited from ordering payment and to refrain from proceeding further with execution upon the judgment, as he claimed the judgment was not final until all matters pending before the court, including the accounting, were concluded. We granted Angle's request for a Writ of Prohibition, finding that because the accounting issues had not been concluded, the judgment of the court was not yet final and could not be executed upon as a final judgment. *State ex rel. Angle v. Hull,* 930 S.W.2d 25 (Mo.App. 1996).

Judge Hull entered an amended judgment on June 26, 1997, in which he accepted the Second Amended Report of Master, dated February 27, 1997, as the basis for the accounting requested under Count V of the Third Amended Cross–Claim. It is from this judgment that Angle currently appeals.

## II. THE RIGHT OF BRIGHT AND HUNTER TO BRING AN INDIVIDUAL CLAIM

■ In Count II of the Third Amended Cross–Claim, Bright and Hunter assert that Angle owed a fiduciary duty to them. They alleged he owed this duty both in his capacity as a partner, and in his capacity as the majority shareholder in Angle & Associates, Inc. Bright and Hunter allege Angle breached this duty by expending corporation funds for his personal benefit without accounting for the funds and without their consent; by using partnership money, assets, equipment and resources for his own benefit without accounting for the funds and without their consent; and by setting up a separate account not accessible to Bright and Hunter in which he deposited revenues from his practice of dentistry contrary to "the agreement" between the parties.

At trial, the jury was not instructed on Bright and Hunter's claim that Angle breached his fiduciary duty as a partner. Bright and Hunter submitted only on two aspects of their claims that he breached his fiduciary duty as an officer or director of Angle & Associates, Inc. Specifically, Bright

and Hunter submitted that Angle improperly diverted corporate assets for his own personal use, and that Angle allegedly set up a separate account not accessible to Bright and Hunter into which he deposited revenue from the practice of dentistry in violation of his agreement. The verdict-directing instruction stated:

> Your verdict must be for plaintiff Bill Bright[2] on the issue of defendant's breach of fiduciary duty as an officer or director of Angle and Associates, Inc., if you believe:
>
> First, defendant and plaintiff Bill Bright were officers and directors in a Missouri corporation known as Angle and Associates, Inc., and
>
> Second, Plaintiffs Bill Bright, Frank Hunter, and Defendant were shareholders in Angle and Associates, Inc., and
>
> Third, while an officer and director of Angle and Associates, Inc., defendant:
>
> (a) expended funds from the corporation account to and for his personal benefit without accounting for the same and without the consent of plaintiff Bill Bright and plaintiff Frank Hunter, or
>
> (b) set up a separate account not accessible to plaintiffs into which he deposited substantial revenues from the practice of dentistry contrary to his agreement with plaintiffs Bill Bright and Frank Hunter, and
>
> Fourth, either of the occurrences identified in paragraphs (a) or (b) was not authorized by the corporation Angle & Associates, Inc., and
>
> Fifth, Defendant dealt with the property of the corporation for his own benefit or profit at the expense of the shareholders, and
>
> Sixth, as a direct result of any one of the occurrences described above, plaintiff Bill Bright was damaged.

The jury found for plaintiffs on their claim for breach of fiduciary duty. Angle asserts that the trial court erred in entering judgment for Bright and Hunter on their individual claims, as shareholders, against Angle for his breach of fiduciary duty as an officer or director, because Bright and Hunter cannot maintain these claims individually. Angle asserts that Bright and Hunter should have commenced a shareholders' derivative action in order to properly bring these claims against him.

■ It is well-established in corporate law that shareholders must normally bring a derivative action in order to file a cause of action against an officer or director:

> Although the fiduciary relationship of a director or officer of a corporation to the shareholders is well-recognized, that relationship is generally held to be between the directors and the shareholders *as a whole*. Corporate shareholders cannot in their own right and for their own personal use and benefit maintain an action for the recovery of corporate funds or property improperly diverted or appropriated by the corporation's officers and directors. The injury is to the corporation—to the shareholders collectively—and not the shareholders individually.

*Dawson v. Dawson,* 645 S.W.2d 120, 125 (Mo.App.1982).

The courts have adopted this rule because, since the wrong is against the corporation, judgment in favor of one stockholder would be no bar to the maintenance of additional actions for the same wrong to the corporation by other shareholders or by a creditor. Assuming each plaintiff could recover only for his or her proportionate share of the injury, there would thus be a risk of a multiplicity of suits, and a consequent possibility that those who brought the latter suits would not be able to receive a full recovery. If the initial plaintiffs could sue for the entire wrong, they would either recover disproportionately or else would be required to hold part of the recovery in trust for the other shareholders and the creditors. To avoid these and similar problems, Missouri and other states require suits for wrongs to the corporation to be brought derivatively, on behalf of the corporation. *Schick v. Riemer,* 263 S.W.2d 51, 54 (Mo.App.1953).

---

**2.** Instruction Number 17 referred to plaintiff Bill Bright; Instruction Number 22 was identical in all respects except that it referred to plaintiff Frank Hunter.

Despite this general rule, there are certain situations in which a statutory right or special obligation may give a shareholder standing to maintain an action in his or her own right. *Delahoussaye v. Newhard*, 785 S.W.2d 609 (Mo.App.1990). For instance, shareholders have been allowed to bring individual actions when they assert violation of rights individual to them, such as claims they were personally denied their right to inspect the corporate books and records under Section 351.215, RSMo. *See Dawson v. Dawson*, 645 S.W.2d at 125–26. Shareholders have also been permitted to sue for a tort if it was committed against them individually, and deprived them of their own corporate shares or their individual rights as shareholders. Thus, in *Gieselmann v. Stegeman*, 443 S.W.2d 127 (Mo. banc 1969), the plaintiff was deprived of his shares of stock when the defendant canceled the plaintiff's interest and reissued the shares to himself. The court held that the outstanding stock, already issued to the plaintiff, was not corporate property, and, therefore, plaintiff was not required to sue on behalf of the corporation, but could maintain an individual action. *Id.* at 131.

In *Place v. P.M. Place Stores Co.*, 950 S.W.2d 862, 865 (Mo.App.1996), this Court similarly allowed a shareholder to sue individually to seek recision of a transfer of stock to former shareholders. Relying on *Gieselmann*, we held that, "where an unlawful increase of stock ousts the complaining stockholders from their position as controlling stockholders, the injury to the complaining stockholder is distinct from that suffered by other stockholders, and the action must be maintained individually." *Id.* at 865. These cases illustrate that individual actions are permitted, and provide the logical remedy, if the injury is to the shareholders themselves directly, and not to the corporation. In such cases, any recovery would belong to the shareholder so the shareholder has the right to sue individually.

In the present case, Bright and Hunter are attempting to recover assets of the corporation allegedly diverted and misappropriated by Angle. Bright and Hunter have failed to allege any facts that would establish they have been harmed individually by that diversion; any such diversion of funds by Angle necessarily directly harmed the corporation, and only indirectly harmed them in various amounts in their capacities as shareholders. Therefore, any recovery of corporate assets would appear to belong to the corporation, not to the individual shareholders.

■ Bright and Hunter assert that they should, nonetheless, be permitted to sue individually because they had a special fiduciary relationship with Angle since he was their partner and owed them a fiduciary duty in that capacity also. In addition, Bright and Hunter claim Angle occupied a position of special trust and confidence in that he recruited Bright and Hunter as investors in his business and by virtue of the fact he was the only dentist of the three. While these aspects of their relationship with Angle are in some ways special, it is not the type of special relationship which prior Missouri cases have held may provide standing for individual actions. Such obligations have resulted where an individual served both as director and trustee of a trust for the shareholder and where a director was a long-time friend, advisor and attorney to the shareholder. In these situations, the director was found to have special fiduciary obligations to the shareholder which created a special basis for standing to assert individual claims. *Massie v. Barth*, 634 S.W.2d 208 (Mo.App. 1982); *Gieselmann v. Stegeman*, 443 S.W.2d 127 (Mo.1969).

Here, by contrast, Bright, Hunter and Angle had limited contact prior to the formation of the partnership. Bright and Hunter were experienced businessmen who willingly entered into a business venture with Angle. The only relationship Angle had with Bright and Hunter was by virtue of the business organizations they formed to pursue their enterprise. It is true that Angle was also a partner of Bright and Hunter and owed fiduciary duties based on this relationship.[3]

---

**3.** In Missouri, partners in a general partnership owe a fiduciary duty to other partners under

Section 358.210.1, RSMo 1994. That Section states:

**Partner accountable as a fiduciary.**

However, Bright and Hunter sought to hold Angle liable based on a breach of fiduciary duty by an officer or director of a corporation for the alleged diversion of corporate assets. Although they pleaded breach of fiduciary duty to the partnership, they chose not to submit that claim either separately, or as an element of their claim of breach of having a duty as an officer of the corporation. They therefore cannot bootstrap the claim for breach of duty against the corporation by reference to the partnership, and indeed we have neither been cited to nor found any case in any jurisdiction which has permitted an individual suit simply because some of the shareholders were also partners of the alleged wrongdoer where, as here, the claim is for diversion of corporate assets. We thus hold that the claim belongs to the corporation and should have been brought derivatively.

■ Bright and Hunter further contend that, even if they should have sued derivatively, no prejudice resulted from their failure to do so because, on these particular facts, all the shareholders were parties to the suit and thus it is merely a matter of form whether the suit is by them as shareholders or as representatives of the corporation. Bright and Hunter's argument assumes that there are no other parties which could be injured as a result of the alleged transfer of assets by Angle. As stated above, the rule requiring shareholders to bring derivative actions is not only to protect other shareholders, but also to protect creditors of the corporation. "Creditors of corporations can be injured by absconding corporate officers as easily as shareholders. Derivative suits protect creditors interests because any recovery goes to the corporation, not the shareholder. Thus, even if all shareholders injured by corporate theft join in one suit, the suit must still be on the behalf of the corporation." *Peterson v. Kennedy*, 791 S.W.2d 459, 464 (Mo.App.1990). Although we are aware of no creditors here, we cannot create a specific exception just for this case. Based on the law as clearly set forth in Missouri, plaintiffs erred in bringing their claims individually

and we have no choice but to reverse the trial court's judgment as to Count II on the claim for breach of fiduciary duty.

■ Although we thus decide we must reverse Count II of the judgment, this does not mean that the fact that all parties are joined and there are no other creditors is irrelevant. It is very relevant in determining whether equity will permit relief. We have determined that equity permits us to remand to allow Bright and Hunter the opportunity to replead their suit for diversion of corporate assets as a derivative claim. As we stated in *Blaine v. J.E. Jones Constr. Co.*, 841 S.W.2d 703, 710 (Mo.App.1992):

> Where a plaintiff has from the outset misconceived the law and has chosen a mistaken legal theory to submit to the jury for redress, we may reverse the judgment against the plaintiff and remand the cause to allow the plaintiff to plead and to submit another theory. We do so, however, where the evidence shows the plaintiff may recover upon another theory. And, we do so because the plaintiff's counsel has missed completely the appropriate theory. Simple fairness requires the plaintiff be given a meaningful day in court.

Similarly, in *Murphy v. Cole Nat'l Corp.*, 731 S.W.2d 28, 31–32 (Mo.App.1987), we affirmed the trial judge's grant of JNOV on plaintiff's res ipsa loquitur theory, but remanded for submission on specific negligence, stating:

> That practice of peremptory reversal for failure of proof, however, is subject to the paramount rule of fair adjudications. Thus, where the failure of proof results from a misconceived theory of recovery, but the evidence nevertheless shows a state of facts which may entitle the plaintiff to recover under a proper theory, in the interests of justice—and where the theory asserted at trial was not for strategic advantage—" 'the judgment will not be

---

Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction con-

nected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

reversed outright, but instead in the exercise of a sound judicial discretion, *the case will be remanded to give [the plaintiff] the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses.'* "

(emphasis in original).

The rationale set out in these cases applies here. While Bright and Hunter did not bring a derivative action, the facts which they have pleaded and the evidence at trial supported a derivative claim for breach of fiduciary duty by Angle. Bright and Hunter had reasonable grounds to believe that a direct action was appropriate under the facts of this case, and indeed it would have been had they submitted on one of the direct theories they once asserted. The fact that they mistakenly brought their claim for division of corporate asserts in an individual capacity should not prevent them from further pursuing relief on behalf of the corporation in these circumstances. Because they have shown facts which may entitle them to recover on behalf of the corporation, we reverse and remand with directions to the trial court to permit them to replead in accordance with this opinion.

■ Bright and Hunter have raised concerns that, on remand, Angle will raise the statute of limitations in order to bar any derivative action. The relevant statute provides:

If any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, or, . . . after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed . . .

§ 516.230, RSMo 1994.

The savings provision generally applies where the cause of action in the second suit is the same cause of action alleged in the first suit and the defendant in the second suit is the same as in the first. *Foster v. Pettijohn*, 358 Mo. 84, 213 S.W.2d 487, 490–491 (1948). In determining whether the cause of action

pleaded in the second suit is the same as that in the first, the same tests are applied as are used in determining whether a pleading is an amendment or a departure. *Blackburn Motor Co., v. Litzinger*, 417 S.W.2d 126, 129 (Mo.App.1967). In deciding whether amendments relate back to pleadings, the relevant consideration is whether the amended pleading arises out "of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Rule 55.33(c); *Koerper & Co. v. Unitel Intern., Inc.*, 739 S.W.2d 705, 706 (Mo. banc 1987). In *Koerper,* the Supreme Court noted that, ". . . a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford." *Id.* at 706.

For a second action to come within the savings statute, it thus must embody the issues set forth in the original action. The subject matter must be the same, but it is not required that the form, legal theory, or ultimate remedy of the two actions be identical.

"The important consideration is whether the gist of the action is the same in both instances so that the plaintiff's recovery in the first action would have barred his recovery in the second; and if this is so, it matters not that the new action may not be in the same form, or along the lines of the same theories, as the old one." *Thomas v. Sterling Finance Co.*, 180 S.W.2d 788, 792 (Mo.App.1944).

In addressing the scope of the savings statute, Section 1026 RSMo,[4] *Thomas* noted that, "the statute, being highly remedial, should receive a liberal construction, and except in a case where the facts and circumstances plainly require, should not be interpreted in such a way as to defeat the beneficent purpose of its enactment." *Id.* at 793. Here, the underlying facts, circumstances and cause of action asserted against Angle in a derivative action would embody the very facts and issues set forth in the original action. The only difference on remand is that the recovery must go to the corporation for the reasons articulated

---

4. Section 1026 RSMo is a prior version of Section 516.230 RSMo 1994.

above. Angle has been a party to this litigation since its inception and is well aware of the basis for Bright's and Hunter' claims. He can hardly claim prejudice or lack of notice simply because the cause of action submitted should have been brought in the name of the corporation.[5] The statute of limitations does not bar a derivative suit on remand.

## III. JURY INSTRUCTIONS

■ In his second point, Angle claims the trial court erred in giving the verdict directing Instructions Nos. 17 and 22 pertaining to Bright and Hunter's claim for breach of fiduciary duty. As previously mentioned, the theory of recovery submitted by Bright and Hunter against Angle was premised solely on his alleged breach of fiduciary duty as an officer or director of the corporation.

Paragraph Third(b) of Instruction Nos. 17 and 22 permitted the jury to find Angle liable if he, "set up a separate account not accessible to Plaintiffs into which he deposited substantial revenues form the practice of dentistry contrary to *his agreement* with Plaintiffs Frank Hunter and Bill Bright." (emphasis added). Angle argues that this paragraph thereby submitted a breach of partnership agreement, or at best some unknown and unspecified corporate agreement, and thus, amounts to a roving commission.

■ "A jury instruction amounts to a 'roving commission' when it fails to advise the jury, or point out in any way, what acts or omissions on the part of the defendant, if any, found by them from the evidence, would constitute liability." *Lashmet v. McQueary,* 954 S.W.2d 546, 550 (Mo.App.1997). A jury instruction may also be considered a roving commission when it is too general or where an instruction is submitted in a broad, abstract way without any limitation to the facts and law developed in the case. *Id.* Here, the instruction was submitted upon a theory of

breach of fiduciary duty of an officer or director of a corporation. The jury instructions permitted the jury to hold Angle liable for setting up a separate account into which he placed corporate revenues, "contrary to his agreement with plaintiffs Frank Hunter and Bill Bright." The instruction did not specify whether the agreement which was allegedly violated was the corporate agreement, the partnership agreement, or yet some other agreement between the parties.

Bright and Hunter claim on appeal the agreement was a "corporate and shareholder decision made with the full participation of all directors, all officers and all shareholders, and was for the direct and exclusive benefit of all three shareholders." Bright and Hunter point to "undisputed testimony" in the record that such a corporate agreement existed. We have examined the portion of the record cited by Bright and Hunter and find that there is no evidence supporting the existence of the agreement as described in the jury instructions. The testimony referred to is that of Mr. Bright. He testified that there was a corporate resolution dealing with the number of signatures required on checking accounts. This portion of the record does not indicate the existence of any corporate agreement regarding how deposits should be made and into which account they should be deposited as indicated by the jury instruction. Further, it does not appear that the corporate resolution referred to by Bright was ever offered into evidence. We have searched the record and exhibits cited at oral arguments also, and have not found any indication that a corporate agreement of the type submitted formally existed. Referring to the existence of an agreement that is not a part of or supported by the record would, obviously, misdirect, mislead and confuse the jury. *Mears v. Columbia Mut. Ins. Co.,* 855 S.W.2d 389 (Mo.App.1993).

---

**5.** Although the Eastern District held in *Smith v. Tang,* 926 S.W.2d 716 (Mo.App.1996), that plaintiff was not entitled to the protection of the savings statute where an earlier survival action was filed by the plaintiff in her individual capacity, we do not believe its rationale is applicable here, where we deal instead with the procedural mechanism for suit against a corporation, not a

survival action. We therefore need not determine whether, when presented with the issue, we would concur with the majority or with the rationale set out by Judge Blackmar's dissent. We hold that on the particular facts that we have been presented in this case, the derivative cause of action relates back.

Even if this corporate agreement were in evidence, however, nothing informs the jury that this is the agreement allegedly breached. There was substantial testimony about Angle's alleged breach of the partnership agreement too. The jury may well have believed that a breach of that agreement was what was submitted. The jury was given a roving commission to search for any evidence of an agreement whereby Angle could be held liable for breach of a corporate fiduciary duty. Jurors must be informed of what alleged conduct they are permitted to consider in order to hold the defendant liable. It is not permissible for the jury to roam through the evidence and choose any facts which suit its decision. *Duncan v. First State Bank of Joplin,* 848 S.W.2d 566 (Mo.App.1993). The instruction was erroneous in this regard. On retrial, the instructions should more specifically identify what acts on the part of Angle it is alleged constitute a breach of his fiduciary duty to the corporation, based on the particular evidence adduced.

## IV. STATUTE OF LIMITATIONS AND RECONCILIATION OF CAPITAL ACCOUNTS

■ In his third and fourth points, Angle claims the trial court erred in denying his motion for directed verdict because the accounting should have been figured as of October 1986, when he gave notice he was withdrawing from the partnership, rather than on February 28, 1995, when the Master found the affairs of the partnership were wound up, and that the statute of limitations had run before Bright and Hunter actually requested an accounting in April 1993.

In determining what date the Master should have used in making the accounting, it is important to distinguish between dissolution and termination of a partnership. The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business. § 358.290 RSMo (1994). Angle argues that the record clearly indicates he withdrew from the partnership by October 1986. Assuming, arguendo, this is true, the dissolution of the partnership did not

immediately terminate the partnership. Section 358.300 provides: "On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed." Thus, under this provision, although the partnership of the parties here may have been dissolved when Angle withdrew, this act did not terminate the partnership; it continued until the winding up of the partnership affairs. *See Meyer v. Lofgren,* 949 S.W.2d 80, 85 (Mo.App.1997); *Schoeller v. Schoeller,* 465 S.W.2d 648, 654 (Mo.App. 1971).

■ "Winding up involves the administration of the partnership assets in order to terminate the business and discharge the obligations of the partnership to its members." *Prange v. Prange,* 755 S.W.2d 581, 589 (Mo.App.1987). While it is unusual for the winding up period to be as long as it was in this case, there is no set period of time within which a winding up must be accomplished. For instance, in *Schoeller v. Schoeller,* 497 S.W.2d 860 (Mo.App.1973), a partnership was dissolved April 2, 1962, but its affairs were not wound up until December 26, 1971, when a court accomplished the task. The court there held that, "a dissolved partnership may continue in business for a short, long, or indefinite period of time, so long as the rights of creditors are not jeopardized and so long as none of the partners insists on a winding up and final termination of the partnership business." *Id.* at 867. *Accord, State Auto. And Cas. v. Johnson,* 766 S.W.2d 113 (Mo.App.1989).

■ Angle asserts that, as the retiring partner, he was entitled to have the capital accounts of the partners reconciled as of the time he alleges dissolution occurred: October 1986. It is true that he could have asked for an accounting at that time, for Section 358.430 provides that a right to an account of his or her interest accrues to any partner, as against the winding up partners or the person or partnership continuing the business, at the date of dissolution. § 358.430, RSMo 1994. This does not mean that the only date for reconciling the accounts was the date of dissolution, however. Where, as here, the partnership business was wound up rather than continued, then each partner's net inter-

est is determined upon the winding up of the partnership and "the accounting must encompass the life of the partnership down to and including the winding up of the business" *Stein v. Jung*, 492 S.W.2d 139, 144, 145–46 (Mo.App.1973); *State ex rel. Angle*, 930 S.W.2d at 29 ("an accounting encompasses the life of the partnership"); *Thomas v. Hurst*, 73 F. 372 (W.D.Mo.1896); *Massey v. Tingle*, 29 Mo. 437 (1860). This reasoning applies here. ABH partnership was dissolved in 1986 when Angle withdrew from the partnership. The partnership had a number of financial and contractual obligations that continued despite the fact the partnership was no longer engaged in establishing dental offices; however, these were not wound up until February 28, 1995. If this Court were to follow Angle's suggestion and fix the appropriate date of accounting as 1986, Bright and Hunter would be penalized for their efforts in winding up the partnership, and these post—dissolution activities would not be included in the accounting. Angle's contention is not in accord with the relevant statutes and case law as set forth above. For these reasons, the trial court did not err in making the accounting as of February 28, 1995.

■ Angle also asserts that, even if February 28, 1995, were a proper date for the accounting to occur, the statute of limitations began to run on Bright and Angle's right to request an accounting on the date the partnership was dissolved in September or October 1986. In support, he cites us to § 358.430, which, as noted, provides that Angle had a right to request an accounting on the latter date.

Here, however, we are not concerned with Angle's right to request an accounting under § 358.430, but rather with whether Bright and Hunter had a right to request an accounting when they filed their Third Amended Petition in 1993. We note, first, that on the first appeal of this case in 1992, this Court specifically remanded so that an accounting could be had. We now specifically hold that their accounting claim did relate back.

Missouri Rule of Civil Procedure 55.33(c) provides, in part:

**Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The Supreme Court addressed the meaning and scope of Rule 55.33(c) in *Koerper & Company v. Unitel Intern., Inc.*, 739 S.W.2d 705 (Mo. banc 1987). The Court explained the Rule's rationale as follows:

The Rule is derived from Rule 15(c) of the Federal Rules of Civil Procedure. This Rule 're-emphasizes and assists in attaining the objective of the rules on pleadings: that pleadings are not an end in themselves, but are only a means to the proper presentation of a case; that at all times they are to assist, not deter, the disposition of litigation on the merits.' 3 Moore, Federal Practice, paragraph, 15.02, p. 813 (2d Ed.1974). 'Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford ...' 3 Moore, supra, paragraph 15.15[3], at 1025 ...

*Id.* at 706.

Bright and Hunter filed their Second Amended Cross–Claim in 1989, asserting claims for: (1) fraudulent misrepresentation, and (2) contribution regarding the promissory note with Centerre Bank. As Bright and Hunter note, the claim for accounting involves all the same obligations, the same conduct, and the same transactions and occurrences as those prosecuted in the second trial under the Second Amended Cross–Claim, and the facts alleged in the Third Amended Cross–Claim are the same as those pleaded and proved in the Second Amended Cross–Claim, and these same parties actually litigated these issues in the first trial, albeit under the rubric of the contribution claim.

More specifically, in their Second Amended Cross–Claim, Bright and Hunter referred to the ABH partnership, the fiduciary duties allegedly breached by Angle, and the basis of their claims for contribution. Similarly in

Count V of the Third Amended Cross Claim Bright and Hunter asked the court to determine Dr. Angles' liability for: (1) unaccounted partnership assets, (2) his breaches of the fiduciary duty owed to plaintiffs, and (3) contribution and indemnification to plaintiffs. Dr. Angle was well aware of the underlying facts that constituted the basis for Bright and Hunter's claim against him. Bright and Hunter's Third Amended Cross–Claim arose out of the same facts, transactions and occurrences of their Second Amended Cross–Claim, and therefore, pursuant to Rule 55.33(c), the claim for an accounting relates back to the date of the original claim for purposes of the statute of limitations. We therefore reject Angle's statute of limitations defense to the Accounting claim.

## V. ATTRIBUTING VALUE TO THE SPELMAN ASSET

■ Angle argues that, in the event we determine the partner's capital accounts should be reconciled later than October 1986, the "present value" of the Spelman asset should be considered. On June 27, 1995, the Amended Report of Master was filed listing all assets and liabilities as of February 28, 1995. In regards to the Spelman asset/liability, the Master gave the following value:

> The Spelman Associates "A" liability as set forth on Exhibit 6 is in fact contingent in that the amount thereof is not liquidated. However, the partnership has a corresponding claim against Spelman Associates "A": which has been valued in an amount equal to the contingent liability. This is an appropriate treatment of the liability and the asset based upon the evidence that an offer has been made to settle the claim by Spelman by offsetting it with the claim by ABH.

Angle contends that the above valuation is incorrect, however, in that, in 1997, long after the date of the report, Spelman offered to pay $40,000 to ABH to buy back the interest held by ABH in Spelman. As evidence of this offer, Angle points to an unsigned Settlement Agreement, Stipulation For Dismissal, Proposed Order of Dismissal, and a Limited Partnership Purchase Agreement that have been prepared by attorneys for Spelman. It

should be noted that these documents were , never before the Master and were prepared some two years after the trial in 1995.

Bright and Hunter assert that, although Angle objected to the introduction of the Amended Master's Report at the jury trial, he never objected to the value place upon the Spelman litigation by the Master or to the adoption of that value by the trial court. He cannot change the basis for his objection now. Even if we were to assume Angle's argument was properly preserved, however, we find no error in the Master's valuation of the Spelman litigation. As we previously set forth, a partnership does not terminate automatically upon dissolution, but continues to such time as the affairs of the partnership are wound up. At some point, however, there must be a final period of accounting and here, that date was found by the Master to be February 28, 1995. Angle offers no basis for holding that a change in value of any asset, such as the subsequent offer made in the Spelman litigation, two years after the final accounting of the partnership, could retroactively reopen the partnership or require an amendment to the final accounting.

## VI. ADMISSION OF THE AMENDED MASTER'S REPORT

■ Angle also claims the trial court erred in admitting the Amended Master's Report into evidence and passing it to the jury because the report did not reconcile the partners' accounts, but stated that Bright and Hunter had advanced over $110,000.00 on behalf of the partnership. He says this misled the jury as to Angle's liability and permitted the jury to speculate as to any damage to the partners resulting from Angle's conduct.

At trial, Angle's only objection to the admission of the Amended Master's Report was that it was entered without sufficient foundation to prove there was actually a partnership. His counsel stated, "We have no objection to the authenticity of the document. We do object to it being offered and given to the jury until after we have had an opportunity to establish the existence of the partnership during the period of time that would not bar

it by the statute of limitations." Angle is not permitted to raise new arguments on appeal.

Even if Angle had preserved this issue, we see no error in admission of the report. The Report was admitted as evidence relevant to Bright and Hunter's claim for contribution. That claim was based upon the partnership contract and damages were sought to compensate them for their payment of partnership debts. Bright and Hunter's claim for contribution sounded in law rather than in equity, and, but for the trial court's directing a verdict at the close of evidence, this claim would have been submitted to the jury.[6] In accord with our direction, Bright and Hunter introduced at trial evidence that an accounting had been completed. Angle never requested a separate trial between the legal and equitable claims. The Master's report was submitted as foundational proof of the partnership assets and liabilities for purposes of the claim for contribution, before a verdict was directed by the court.

■ A claim for contribution can be either legal or equitable, depending on the relief requested. As proof of their claim for contribution, Bright and Hunter were required to prove: (1) they jointly incurred obligations with the defendant, (2) they paid those obligations, (3) they demanded contribution form defendant, and (4) defendant refused to contribute. *Transwestern Industries, Inc. v. Shue,* 537 S.W.2d 848, 849 (Mo. App.1976). The Amended Master's Report set forth the substantial obligations jointly incurred by the partnership and the monies advanced by each partner. Moreover, Missouri law provides that if the "issues are to be tried by a jury, the master's findings on the issues submitted to the master may be reported to the jury as having been determined and only fact issues other than those determined by the master shall be submitted to or determined by the jury." *Rule 68.01(g)(3).* Here, the claim for contribution was a jury issue and the Master's findings

were relevant to this claim, and was therefore, properly submitted to the jury.

Angle might have asked for a limiting instruction which would have told the jury that the report was relevant only to the contribution claim. No limiting instruction was requested, however.

If the defendant fails to seek an instruction limiting the purpose for which the evidence may be considered, he cannot later be heard to complain that the jury considered such evidence for the wrong purpose. If he requests it, the objector has a right to an instruction limiting the extent to which and the purpose for which the jury may consider the evidence. Conversely, when no request is made for a limiting instruction, no error exists when the trial court does not give the instruction. *Martin v. Durham,* 933 S.W.2d 921, 924 (Mo.App. 1996).

For the above reasons, we find the trial court did not err in admitting the Amended Master's Report.

## VII. INFORMING THE JURY OF THE COURT'S DIRECTED VERDICT

■ In his final point on appeal, Angle claims that the trial court erred in not permitting him to advise the jury of the trial court's judgment on Count III for contribution, and that he was prejudiced in that the jury was misled into giving Bright and Hunter a double recovery. We need not reach this issue, since we presume it will not arise again on remand. We do note, however, that Angle cites no authority, and we have found none, that would require the trial court to advise the jury of its entry of judgment as to a claim for contribution, or the amount of that judgment. Generally, the jury's decision should not be influenced by matters outside the scope of the determination requested of them. *Butcher v. O'Connor,* 401 S.W.2d 490, 494 (Mo.1966). It is contrary to Missouri jury instruction practice to inform the jury of the amount of settlement or col-

---

**6.** In Angle's first appeal, we stated that this was an action at law, and that such an action between partners will not lie until an accounting results in the striking of a balance. "In this case there is no indication of whether or not the partnership has been dissolved and an account-

ing had of the partnership accounts. There is not pleading or evidence to indicate that this has been done. There is no doubt that this is an action at law between partners based upon the business of the partnership." *Bright v. Angle,* 833 S.W.2d 12, 14 (Mo.App.1992).

lateral payments, and we see no reason why a different rule would apply here. Moreover, there is no basis, except speculation, to believe that the jury verdict duplicated some of the damages awarded by the judge on the partnership claim for contribution. The latter was not submitted and the damages awarded were within the amounts shown by the evidence to have been taken from the corporation. In Missouri, if none of the verdicts is excessive, prejudicial error is not established by the fact verdicts are for identical amounts. *Flanigan v. City of Springfield*, 360 S.W.2d 700, 705 (Mo.1962). We do not mean to suggest that Angle could not have asked for a more narrow instruction withdrawing the partnership contribution issue from the jury. *Cf., Lohmann v. Norfolk & Western Ry. Co.*, 948 S.W.2d 659, 665 (Mo.App.1997). He never asked for such an instruction, however.

For the reasons set out above, we affirm the trial court's judgment on the partnership claim for contribution, but reverse and remand the judgment on Count II, for his breach of duty as an officer and director of the corporation, and remand for a new trial on the latter claim.

RIEDERER, P.J., and LOWENSTEIN, J., concur.