

# In the
# Missouri Court of Appeals
## Western District

TIM LASKE, INDIVIDUALLY AND ON BEHALF OF OTHERS,

      Appellant,

v.

MARK KRUEGER, WERNER SUBLETTE, RON PHILLIPS AND CHARLES ZEMAN,

      Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

WD85173

OPINION FILED:
January 10, 2023

**Appeal from the Circuit Court of Adair County, Missouri**
The Honorable Tracey A. Mason-White, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge and
John Torrence, Special Judge

Tim Laske ("Laske"), individually and on behalf of others similarly situated, appeals

the Circuit Court of Adair County's ("trial court") judgment granting the motion to dismiss

filed by Mark Krueger, Werner Sublette, Ron Phillips, and Charles Zeman (collectively,

"Respondents").  On appeal, Laske argues the trial court erred in dismissing his petition

because Laske's claims against Respondents are direct claims, not derivative claims, in that

the alleged breach by Respondents harmed the shareholders only, not the corporation, and

only the shareholders will be entitled to recover as damages the difference between the price Respondents negotiated for their stock and what was available in the market. On appeal, Respondents filed a motion to dismiss for lack of appellate jurisdiction that was taken with the case. We deny Respondents' motion to dismiss the appeal and affirm the judgment of the trial court.

## Factual and Procedural History[1]

As alleged in the petition, Laske was a shareholder of Bancorp, Inc. ("Bancorp") and owned 263 shares of Bancorp stock, representing 3.16% of the issued shares. In fall of 2016, the Bancorp Board of Directors ("Board") began exploring a sale of Bancorp. Connections Bancshares, Inc. ("Connections") was the first potential buyer and made an initial offer to purchase all issued stock of Bancorp for $963 per share. On September 13, 2016, Respondents organized a meeting of Bancorp's top shareholders at which Connections presented a Letter of Intent ("LOI") to purchase all the outstanding stock of Bancorp. The proposal presented two choices for the shareholders: the shareholders could sell their stock outright for a purchase price of $1,025 per share, or the shareholders could opt to buy into Connections stock by exchanging their Bancorp stock at $910 per share for a minimum of 1,200 shares of Connections stock at the price of $115 per share. The LOI also contained a "no shop" provision, which stated that "Sellers agree that it will not negotiate or discuss the sale of the Bank assets with another party until" a purchase

---

[1] On appeal from a motion to dismiss, we "assume the factual allegations contained in the petition are true and make no attempt to weigh their credibility or persuasiveness." *Fenlon v. Union Elec. Co.*, 266 S.W.3d 852, 854 (Mo. App. E.D. 2008).

agreement has been executed. Connections gave Bancorp shareholders until October 7, 2016, to accept the terms of the LOI.

Bancorp's shareholder agreement contains a "Drag-Along Option," which states that if shareholders owning 70% or more of the outstanding shares of stock agree to sell their stock to a third party or merge with or into another entity, those wishing to sell or merge can require all shareholders to participate in the transaction and forfeit their option rights. Respondents moved forward with Connections's offer and arranged meetings with shareholders to argue in favor of the offer. In doing so, Respondents withheld information from shareholders, including information about other interested buyers and other potential offers. Respondents were aware of at least three other banks interested in submitting higher bids to Bancorp, but none of the other potential buyers was allowed to conduct due diligence. On November 18, 2016, after Connections's LOI had expired, one potential buyer, Alliant Bank, offered to purchase Bancorp for $8,750,000, or $1,050 per share. Alliant Bank later increased its offer to $9,250,000, or $1,109 per share.

Bancorp received legal advice that a formal process to explore the other offers would be advisable after Connections's LOI had expired. Bancorp's president, Sam Berendzen ("Berendzen"), called a special meeting of shareholders on November 28, 2016, and explained that Bancorp's attorney had suggested starting the process over to consider other potential buyers. Berendzen explained that the organization and initial process utilized in the potential sale of Bancorp was unsatisfactory and legally unsound. However, Respondents pressed the Connections offer on the shareholders by urging them to ignore potential buyers and commit to only dealing with Connections. Although the majority of

3

shareholders present at the meeting voted in favor of starting the process over to consider other offers, the minutes of the meeting reflect that 54% of the shares allegedly represented at the meeting voted to continue to negotiate exclusively with Connections. This vote count was accomplished by adding a "yes" vote from the largest shareholder who was not present at the meeting, but no other absent shareholders' votes were sought or added to the count. Bancorp then focused exclusively on Connections's offer and did not solicit any other offers after the November 28, 2016, meeting. Respondents withheld information from the shareholders regarding the other proposals made to purchase Bancorp. Respondents also excluded from meetings the one director who objected to proceeding exclusively with Connections.

On February 2, 2017, the Board announced that 70% of shareholders had signed a stock purchase agreement with Connections, and, pursuant to the "Drag-Along Option," all shareholders would be forced to accept Connections's terms. Respondents personally benefitted from the agreement with Connections, and several members of the Board secured positions on the Connections board of directors. The structure of the agreement allowed Respondents to benefit from the stock-exchange option, but many shareholders did not own enough stock to participate in the exchange option without adding additional funds. In the final agreement, Connections purchased Bancorp's stock for $1,050 per share. The last proposal from Alliant Bank offered to buy Bancorp's stock for $1,109 per share.

Laske filed a class action petition on behalf of all Bancorp stockholders who sold their Bancorp stock to Connections. In the petition, Laske alleged Respondents breached their fiduciary duties of care and loyalty to act in the best interest of the shareholders by

4

securing a transaction that offered the best value available to the shareholders, and Respondents breached their fiduciary duties through self-dealing by securing substantial compensation as members of the Connections board of directors. Laske alleged that he and the class were directly harmed by Respondents' actions. Respondents filed a motion to dismiss, which was granted by the trial court, because Laske lacked standing to bring a direct action against Respondents. The trial court held that Laske must bring a derivative action against Respondents on behalf of the corporation. The trial court issued an order granting Respondents' motion to dismiss on October 27, 2021, and issued its judgment on January 31, 2022. Laske filed another civil action in the trial court asserting the same claims against Respondents as a derivative action (*Laske II*) on November 21, 2021. Laske voluntarily dismissed his petition in *Laske II* on September 12, 2022.

On appeal, Laske argues the trial court erred in granting Respondents' motion to dismiss for lack of standing because Laske had standing to bring a direct suit against Respondents because only the shareholders, not the corporation, were harmed by Respondents' breaches of fiduciary duties. Respondents filed a motion to dismiss Laske's appeal for lack of appellate jurisdiction.

**Standard of Review**

"The standard of review for an appeal from a dismissal for lack of standing is *de novo*." *Courtright v. O'Reilly Automotive*, 604 S.W.3d 694, 699 (Mo. App. W.D. 2020). "A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition." *Dunn v. Precythe*, 557 S.W.3d 454, 456 (Mo. App. W.D. 2018) (internal quotations omitted). "The petition states a cause of action if it sets forth any set

5

of facts that, if proven, would entitle the plaintiffs to relief." *Id.* (Internal quotation omitted).

## Analysis

### *Respondents' Motion to Dismiss for Lack of Appellate Jurisdiction*

As an initial matter, we must first determine whether we have jurisdiction to decide the merits of Laske's appeal. Respondents argue that, although the trial court issued a judgment, it did not meet the requirements of a final judgment for purposes of appeal. We disagree.

"Any involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify." Rule 67.03.[2] "The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." *Walters Bender Strohbehn & Vaughan, P.C. v. Mason*, 316 S.W.3d 475, 477 (Mo. App. W.D. 2010). "An exception to this general rule is that an appeal can be taken where the dismissal has the practical effect of terminating the litigation in the form presented by the plaintiff." *Id.* at 477-78. "If the dismissal was such that refiling of the petition at that time would be a futile act, then the order of dismissal is appealable." *Id.* at 478. "[W]hen the effect of the order is to dismiss the plaintiff's action and not the pleading merely, then the judgment entered is final and appealable because the dismissal amounts to an adjudication on the merits." *Id.* "[D]ismissals without prejudice have been held appealable in such cases where the dismissal was based on statutes of limitations, theories of estoppel, a plaintiff's lack of

---

[2] All rule references are to Missouri Court Rules (2022), unless otherwise indicated.

standing, failure of the petition to state a claim where the plaintiff chose not to plead further, failure of the plaintiff in a medical malpractice action to file the health care provider affidavit and the plaintiff's claims not being covered by the statute upon which the petition was based." *Id.* (internal alterations omitted).

Here, the trial court dismissed Laske's petition due to Laske's lack of standing to bring a direct claim on behalf of himself and the putative class and found that Laske's claim must be brought as a derivative claim on behalf the corporation instead. Although the trial court's judgment did not state that the petition was dismissed with prejudice, the dismissal has the practical effect of terminating the litigation in the form presented by Laske. *See Siefert v. Leonhardt*, 975 S.W.2d 489, 492 n.1 (Mo. App. E.D. 1998). That is, Laske individually would be barred from filing another direct claim against Respondents. Laske filed *Laske II* as a derivative action against Respondents, meaning that Laske was merely a nominal plaintiff suing Respondents on behalf of the corporation. Laske's direct action against Respondents on behalf of himself and the putative class, however, was terminated by the trial court's judgment dismissing the petition. Accordingly, we have jurisdiction to determine the merits of the trial court's judgment. Respondents' motion to dismiss for lack of appellate jurisdiction is denied.

### *Derivative vs. Direct Action*

On appeal, Laske argues the trial court erred in dismissing his petition, which asserted direct claims against Respondents on behalf of himself and all Bancorp stockholders who sold their Bancorp stock to Connections. The trial court found that

7

Laske's petition alleged derivative rather than individual claims and thus dismissed the petition. We agree with the trial court.

The difference between a direct action and a derivative action was most recently discussed by our Supreme Court in *Nickell v. Shanahan*, 439 S.W.3d 223 (Mo. banc 2014). "A derivative action is a suit by the corporation conducted by the shareholders as the corporation's representative. The shareholder is only a nominal plaintiff, and the corporation is the real party in interest." *Id.* at 227. "Derivative actions are aimed at vindicating injuries 'to the corporation--to the shareholders collectively--and not the shareholders individually." *Id.* (quoting *Centerre Bank of Kan. City, Nat'l Ass'n v. Angle*, 976 S.W.2d 608, 613 (Mo. App. W.D. 1998)). Derivative actions must be brought in accordance with Rule 52.09.

By contrast, a shareholder may bring a direct action against corporate officers and directors to redress individual wrongs. *Nickell*, 439 S.W.3d at 227. "Individual actions are permitted, and provide the logical remedy, if the injury is to the shareholders themselves directly, and not to the corporation." *Id.* Direct actions are permitted "so that individual shareholders or discrete groups of shareholders could redress injuries unique to them rather than to the corporation as a whole." *Id.*

Several Missouri cases have held that suits against corporate officers were properly brought as direct actions. Common instances of direct actions arise when individual shareholders or a discreet group of shareholders are prohibited from exercising their rights as shareholders, such as rights to inspect corporate records. *See Gieselmann v. Stegeman*, 443 S.W.2d 127, 131 (Mo. 1969); *Dawson v. Dawson*, 645 S.W.2d 120, 125-126 (Mo.

8

App. W.D. 1982). In *Gieselmann*, the petition alleged that certain corporate officers had refused to permit plaintiffs, six shareholders, to inspect the corporate books and records; prevented plaintiffs from calling or providing notice of a special meeting of shareholders to conduct business; and trespassed upon and occupied the physical premises to the exclusion of plaintiffs. 443 S.W.2d at 131. The Supreme Court held that "[a]ctions based upon torts where the injury is done directly to an individual shareholder, director or officer as such, depriving him of his rights, for instance, wrongfully expelling him or refusing to allow him to inspect the corporate books and records, are actions which may be brought by shareholders as individuals." *Id.* at 131.

Courts also recognize direct actions when corporate officers interfere with the personal stock of shareholders for their own benefit. In *Gieselmann*, after plaintiffs were permitted to inspect corporate records, the amended petition alleged that they discovered that certain stock certificates for 14,840 shares issued to plaintiffs had been cancelled and issued to an associate of one corporate officer. *Id.* An additional 8,000 shares of unissued stock from the corporate treasury had been issued to the same corporate officer to seize control of the corporation. *Id.* Plaintiffs' amended petition alleged direct harm as a result of the officers' actions. *Id.* Our Supreme Court highlighted that, "[o]rdinarily an action based on acts relating to the capital stock as an entirety is a corporate cause of action and cannot be sued for by a shareholder merely as an individual." *Id.* However, the Court found that the petition correctly alleged direct harm because the acts complained of worked an injury to the "rights belonging to the stockholders individually as between them and the corporation and its other stockholders," and "where an unlawful increase of stock ousts the

9

complaining stockholders from their position as controlling shareholders, the action is individual and not derivative." *Id.* at 131-32. This Court reached a similar result in *Place v. P.M. Place Stores Co.*, 950 S.W.2d 862, 866 (Mo. App. W.D. 1996). In *Place*, the plaintiff's position as majority shareholder was diluted when the board of directors transferred treasury stock to former shareholders, thus increasing the outstanding stock. *Id.* The plaintiff alleged that the transfer was unlawful because the new board of directors had been improperly elected. *Id.* The plaintiff's claim as to the transfer of treasury stock was properly brought as a direct action because the position of plaintiff as a controlling stockholder was at issue. *Id.*

Laske's claims against Respondents are unlike the direct claims brought by the various plaintiffs in the aforementioned cases. Here, Laske alleges that Respondents breached their fiduciary duties of care and loyalty to act in the best interest of the shareholders by securing a transaction that offered the best value available to the shareholders. Laske also alleges that Respondents engaged in self-dealing by securing positions on the Connections board of directors. As a result, all of the shareholders' stock was purchased for less than it would have been had Respondents secured an agreement with another bank that offered a higher price, such as Alliant Bank. Laske's claims allege harm to all the shareholders' stock in the form of diminished value, which necessarily alleges harm to the value of Bancorp as a corporation. Laske's own brief states "The damages Laske's petition seeks are in part measured by the difference between the purchase price [Connections] paid to Laske and the other shareholders ($1,050/share) and the purchase price [Bancorp] shareholders would have received under the highest proposal

10

Defendants received ($1,109/share)." In this manner, Laske's claims are not comparable to the direct claims in *Gieselmann* or *Place* but are derivative claims applicable equally to all stock in the company.

Because we are bound by our Supreme Court's decision in *Nickell v. Shanahan*, we find that Laske's claims must be brought as derivative actions. In *Nickell*, the plaintiff ("Nickell") alleged that he and a putative class were directly injured by the corporate officers' breach of fiduciary duties when they expedited the merger of the company ("ESSI") in order to avoid liability for unlawfully backdating stock options. 439 S.W.3d at 226. In doing so, the officers accepted a reduced purchase price in exchange for the purchasing company to assume liability for the backdating scheme. *Id.* Nickell alleged that the officers misled shareholders to agree to the merger, which decreased the value of the ESSI shares at the time of the sale. *Id.* The Court held:

> Nickell's allegation that Respondents' misdeeds diminished the value of ESSI shares is, by necessity, an allegation that Respondents' actions diminished the value of ESSI as a corporation. The diminished corporate value is a corporate injury. While individual shareholders may have sustained damages in the form of decreased share price, this damage was common to every ESSI shareholder and stemmed from the underlying corporate injury. The action is, therefore, derivative in nature.

*Id.* at 229.

Laske's claims are similar to Nickell's claims. Here, Laske alleged that Connections purchased Bancorp's stock for $1,050 per share while an offer from Alliant Bank for $1,109 per share went ignored. Laske further alleges that the Respondents engaged in self-dealing by securing positions on the board of directors of Connections, which was a more valuable bank than Bancorp. Respondents misled shareholders into agreeing to the transaction

11

without disclosing that more profitable offers had been presented to the Board. The claims alleged by Laske are derivative claims because, while individual shares may have sustained damages, this damage was common to every Bancorp shareholder, even Respondents. Like *Nickell*, Respondents' misdeeds that are alleged to have diminished the value of the individual shares necessarily diminished the value of Bancorp as a corporation. Therefore, the injury belongs to Bancorp, and shareholders may only bring a derivative suit as the nominal plaintiff on Bancorp's behalf.[3]

Laske argues that this case is distinguishable from *Nickell* because Laske does not allege that Bancorp suffered any harm through the misdeeds of Respondents. Rather, according to Laske, only the shareholders were harmed through the diminished value of their stock. But Nickell made the same argument Laske now makes, in that Nickell and other shareholders were directly harmed because "ESSI officers and directors breached their fiduciary duties by accepting improper personal benefits and failing to act in the best interests of ESSI shareholders to obtain the highest price for ESSI shares." *Nickell*, 439 S.W.3d at 226. Nickell never alleged corporate injury, but the Court found that the corporation was *necessarily* injured because the diminished value of ESSI shares diminished the value of ESSI as a corporation. *Id.* at 229. Here too, although Laske does not allege corporate injury, it follows that the transaction that resulted in a lower price for

---

[3] Laske argues that, if the trial court's judgment is affirmed, Respondents will argue that Laske lacks standing to bring a derivative action because Laske is no longer a shareholder of Bancorp. However, Rule 52.09 makes clear that, in a derivative action, "the petition shall be verified and shall allege that *the plaintiff was a shareholder or member at the time of the transaction of which there is a complaint* or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law." (Emphasis added). Therefore, assuming the allegations in the petition are true, Laske has standing to bring a derivative action on behalf of Bancorp because he was a shareholder at the time of the transaction of which there is a complaint.

12

each individual share of stock necessarily diminished the value of Bancorp as a corporation. In this regard, Laske's attempt to distinguish *Nickell* from the present case fails.

Laske asks this Court to adopt the test articulated in *Tooley*, a Delaware Supreme Court case regarding the difference between direct and derivative actions. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). In *Tooley*, the court reconsidered and chose to abandon a "special injury" test previously employed by Delaware courts to determine if a shareholder suit is direct or derivative. Under Delaware's "special injury" test, as under *Nickell* and *Gieselmann*, a claim was considered derivative if all shareholders were injured equally by a challenged corporate action. The *Tooley* court chose to abandon the "special injury" standard in favor of a two-part test: "The analysis must be based solely on the following questions: Who suffered the alleged harm--the corporation or the suing stockholder individually--and who would receive the benefit of the recovery or other remedy?" *Id.* at 1035. The court explained that it was adopting this two-part test because, in the court's view, the earlier "special injury" standard unjustifiably treated certain claims as derivative, even though shareholders' property interests were directly affected by the challenged action:

> In describing how a court may distinguish direct and derivative actions, [an earlier Delaware Supreme Court case] stated that a suit must be maintained derivatively if the injury falls equally upon all stockholders. Experience has shown this concept to be confusing and inaccurate. It is confusing because it appears to have been intended to address the fact that an injury to the corporation tends to diminish each share of stock equally because corporate assets or their value are diminished. In that sense, the *indirect* injury to the stockholders arising out of the harm to the corporation comes about solely by virtue of their stockholdings. It does not arise out of any independent or

13

direct harm to the stockholders, individually. That concept is also inaccurate because a direct, individual claim of stockholders that does not depend on harm to the corporation can also fall on all stockholders equally, without the claim thereby becoming a derivative claim.

*Id.* at 1037.

We cannot adopt Delaware's modified test here because our Supreme Court in *Nickell* adequately articulated the test for Missouri lower courts to apply, and we are bound by that precedent. In *Nickell*, the Court stated, "Derivative actions are aimed at vindicating injuries 'to the corporation--to the shareholders collectively--and not the shareholders individually.'" 439 S.W.3d at 227 (quoting *Centerre Bank*, 976 S.W.2d at 613). The Court emphasized that "an action that affects all shareholders is generally derivative in nature." *Nickell*, 439 S.W.3d at 228. And when "the injury is to the shareholders themselves directly, and not to the corporation[,]" an individual or direct action is the "logical remedy." *Id.* Only the Missouri Supreme Court can modify *Nickell*'s test for distinguishing direct and derivative actions.

Here, Bancorp as a corporation would necessarily be harmed by the diminished value of the stock owned by all its shareholders if the allegations in the petition are proven. Accordingly, the trial court did not err in granting Respondents' motion to dismiss for failure to state a claim based on Laske's lack of standing to bring the allegations in the petition as a direct action.

Point denied.

14

## Conclusion

For the foregoing reasons, Respondents' motion to dismiss for lack of appellate jurisdiction is denied, and the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur

15