Mansfield WOOLFOLK (Plaintiff),
Respondent,

v.

JACK KENNEDY CHEVROLET COMPANY,
a Corporation (Defendant), Appellant.

No. 29631.

St. Louis Court of Appeals.

Missouri.

Dec. 4, 1956.

Motion for Rehearing or for Transfer to
Supreme Court Denied Jan. 3, 1957.

Not to be reported in State Reports.

John D. Hasler, St. Louis, for appellant.

Gerwitz & Seegers, and G. L. Seegers, St. Louis, for respondent.

MATTHES, Judge.

This is an action for damages for breach of contract. Plaintiff recovered a verdict and judgment for $1,311. Defendant has brought the case to this court by appeal.

The facts and circumstances giving rise to the litigation grew out of the purchase by plaintiff from defendant of an automobile. Plaintiff's pleaded theory was that in connection with the purchase of the automobile, defendant agreed to procure for plaintiff, for a term of twenty-four months, collision insurance covering actual cash value of the vehicle less $50, payable to the plaintiff and to the mortgagee; that the premium of $163 charged for said policy was paid by plaintiff to defendant, of which $1.60 was later refunded to plaintiff; that defendant breached the contract in that it failed to purchase $50 deductible collision insurance; that within the period for which defendant had agreed to procure collision coverage insurance, plaintiff's automobile was involved in a collision and damaged to the extent of $1,500; that by reason of the breach of contract by defendant, plaintiff suffered damages in the amount of $1,-950, which was the sum of $1,450 (damages to automobile less $50), and $500 expenses incurred in employing counsel and filing suit.

No dispute exists as to most of the pertinent facts upon which plaintiff relies. On April 22, 1954, plaintiff signed an order for the purchase of a Chevrolet automobile. Upon the face of this order, in pencil, appeared, "24 Mo. Ins.". Thereafter an invoice, a chattel mortgage, and note were prepared by defendant. These documents are dated April 29, 1954. It is not entirely clear whether the note and chattel mortgage were signed prior to or on the date that the automobile was delivered to plaintiff, but both plaintiff and defendant's general manager testified that the invoice, a copy of the note, and chattel mortgage were mailed to plaintiff after he took possession of the automobile. The invoice shows the total "time price" was $2,438.28. Included therein was an item for "Ins. $163." This document discloses that plaintiff made a cash payment of $353.56, and was allowed $500 for his old automobile, leaving a balance of $1,584.72 to be paid in twenty-four monthly installments of $66.03 each. The chattel mortgage is the only document which in any manner discloses the type of insurance that was to be procured. Appearing on the face of the chattel mortgage are these words and figures: "Insurance payable to purchaser and mortgagee, covering $50.00 ded. $163." The chattel mortgage also discloses that the total "time price" was $2,438.28.

It is obvious that immediately following the closing of the transaction for the sale of the automobile, Leonard Kennon, defendant's general manager, prepared an application for insurance to Thomas F. X. Gibbons Agency. Therein plaintiff's occupation was given as "driver and owner employed by: Marcella Cab Company". The application also stated that the automobile was to be used for pleasure purposes. The manager of the insurance agency, upon receipt of the application, con-

tacted Kennon for the purpose of determining definite information with respect to the use of the automobile. Kennon made further investigation and learned it was to be used for a taxicab, and accordingly informed the Gibbons Insurance Agency. Because of that fact the insurance agency refused to issue the $50 deductible collision policy covering both the owner and mortgagee, but did advise that it would issue a policy providing for single interest coverage, which would cover only the interest of the holder of the mortgage. When Kennon ascertained from the Mercantile Trust Company, purchaser of the mortgage, that it required protection of its interest, he procured a policy from the insurance agency which did provide for single interest coverage as well as other coverage not referred to or designated in the chattel mortgage. The policy was dated April 29, 1954, was effective for a period expiring on January 29, 1956, and the premium for all coverage therein provided was $161.40. Kennon was furnished with the original of the policy, as well as an abbreviated copy thereof referred to and designated as a daily report. The daily report was forwarded to plaintiff, who testified that he received it "3 or 4 days" after he took delivery of the car, and that it came from the Fidelity Fire Insurance Company, which is the company that issued the policy. Plaintiff testified that upon receipt of the daily report, he did not read any part of it, but "put it in my box". It is important to note that the daily report shows upon its face that collision coverage is provided in accordance with endorsement attached. There were three endorsements, the first providing for conversion, embezzlement, or secretion coverage; the second for single interest fire and theft coverage, and the third for single interest collision coverage. The latter endorsement reads in part, "the Policy designated above is extended to insure the interest only of Mercantile Trust Company * * *". On the 14th of May, 1954, the defendant mailed its check to plaintiff for $1.60 covering the difference in the cost of the policy procured which was $161.40, and the amount for which plaintiff was charged, being $163. Defendant's manager testified that he personally wrote a letter to plaintiff which accompanied the check, and which reads as follows:

"May 14, 1954
"Mr. Mansfield Woolfolk
4737 McMillan
St. Louis, Missouri

"Dear Mr. Woolfolk:

"Enclosed please find our check in the amount of $1.60 covering return premium on your insurance. This difference represents the difference between Class I collision insurance, which we ordered but were unable to secure, and single interest policy, which was the only coverage we were able to secure. This single interest policy covers the Mercantile Trust Co. only and does not cover you, as the owner, under Class I $50.00 deductible coverage as shown on your mortgage.

"If you are able to secure other coverage satisfactory to both you and the Mercantile Trust Co., we will be happy to cancel this single interest policy and return any amount due you (to) help cover the cost of any other policy you may secure.
                "Very truly yours,
                    "Leonard Kennon
                    "Business Mgr."

Plaintiff readily admitted receiving and cashing the check, but denied receiving the original of the letter, carbon copy of which was produced by Kennon. He stated, however, that there was a letter accompanying the check which merely advised him that there was an overcharge of $1.60 for insurance.

At no time after plaintiff received the daily report did he raise any objection to the type of insurance that had been procured, and nothing of an unusual nature transpired until July 31, 1955, when plaintiff's automobile, having a value according

to his testimony of $1,500, was demolished in a collision. On the next day plaintiff called at defendant's place of business to report the collision and to request the defendant to repair or replace his automobile. It was then for the first time, according to plaintiff's testimony, that he learned that the policy that had been procured for him did not provide for $50 deductible collision coverage covering him as well as the mortgagee.

Plaintiff bottoms his case upon the theory that there was a valid contract between the parties under which plaintiff paid for and the defendant agreed to procure a policy of insurance covering plaintiff as well as the holder of the mortgage, and providing for $50 deductible insurance; that there was a breach of said contract by defendant resulting in damages to plaintiff. The defendant's position was: (1) There was no meeting of the minds, hence no contract obligating defendant to procure the insurance; (2) if there was a contract, plaintiff accepted defendant's performance in full satisfaction of his rights thereunder.

■ Defendant first urges that a submissible case was not made, and that the trial court erred in failing to sustain its motion for a directed verdict. At the outset we must determine whether a contract came into existence under which defendant was obligated to purchase the type of insurance contracted for. Plaintiff must of necessity rely upon the order for the purchase of the automobile, the invoice, and the chattel mortgage as constituting the contract because no other evidence pertaining to the subject was adduced. It seems clear that the bare recitals of "24 Mos. Ins." in the order, and "Ins. 163" in the invoice, throw little light on the basic question. So of necessity the contract must have its origin in the provision appearing in the chattel mortgage which we have hereinabove set out. While we find nothing in the latter document whereby the defendant explicitly and unqualifiedly agreed to purchase a policy of insurance payable to purchaser (plaintiff) and the mortgagee providing for $50 deductible collision insurance, we have concluded upon consideration of the subject matter and the relation of the parties to the subject matter, that it was the intention of the parties that the defendant, as part of the consideration for purchase, would procure the type of insurance designated in the chattel mortgage. Mecartney v. Guardian Trust Co., 274 Mo. 224, 202 S.W. 1131; Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S.W. 151; Burman v. Vezeau, 231 Mo.App. 1109, 85 S.W.2d 217. Indeed, that such was the intention of the parties is best demonstrated by the fact that the defendant made an effort following execution of the chattel mortgage to purchase the very type of insurance referred to in the chattel mortgage. We therefore rule that the evidence was sufficient to submit to the jury the question as to whether the contract was entered into.

■ While defendant failed to procure insurance affording plaintiff the protection contemplated by the contract, it is undisputed that a policy was obtained through defendant's efforts, and that plaintiff received an abbreviated copy thereof and an exact copy of the endorsements thereon. Thus the issue is narrowed to the question: Do the facts and circumstances show that plaintiff accepted the performance by defendant as a full compliance with, and discharge of, its obligation under the contract. If so, it must follow that there was no breach and the case should not have been submitted to the jury. There is good reason and authority for holding that whatever the parties see fit to accept as performance of the contractual obligations will be so regarded by the courts. 17 C.J.S., Contracts, § 494, pp. 999, 1000; 13 C.J., Contracts, § 767, pp. 673, 674; 12 Am.Jur., Contracts, § 355, Note 13, p. 921; Murray v. Farthing, 6 Mo. 251; Wells v. Hocking Valley Coal Co., 137 Iowa 526, 114 N.W. 1076; Aaron v.

Aaron, Tex.Civ.App., 173 S.W.2d 310. It is true that there was not an acceptance by plaintiff in express terms, but the facts and circumstances point inevitably to an acceptance, which by sound authority may be implied from conduct. 12 Am.Jur., Contracts, § 356, p. 922. By plaintiff's admission he received the daily report three or four days following delivery of the automobile. He was a literate individual. He had purchased automobiles and had been engaged in the taxi business prior to the instant transaction, and was, at least to a degree, possessed of business experience. Ample opportunity was afforded plaintiff to read the copy of the policy and the endorsements, and by so doing he would have become fully acquainted with the type of coverage that was in existence. He chose to do nothing after receiving the daily report for a period of approximately fifteen months. It cannot avail plaintiff to say, as he did, that "I did not read any part of it (daily report) but put it in my box." It is well settled that one who can read and does not read is foreclosed by his own negligence. "The law affords to every one a reasonable protection against fraud in dealing, but it is not an indulgent guardian which can go to the romantic length of giving protection against the consequence of indolence, folly or careless indifference to the ordinary and accessible means of information." Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, loc. cit. 663. See, also, Edmund S. Mills Corp. v. Stinebaker, Mo.App., 67 S.W.2d 821, loc. cit. 822, and cases cited.

From what has been said we must hold that there was no issue for the jury to pass upon, and consequently the court should have sustained defendant's motion for a directed verdict.

The judgment is reversed.

ANDERSON, P. J., and ELMO B. HUNTER, Special Judge, concur.

On Motion for Rehearing

MATTHES, Judge.

Plaintiff, respondent, has filed a motion for rehearing in which he takes issue with our holding that he accepted the act of defendant in procuring the limited interest insurance policy as full and complete performance of the contract.

▇ Plaintiff strenuously insists that when defendant purchased the single interest policy, "the original contract was then and there breached", and that the rights of plaintiff and liability of defendant became fixed at that time. It is stated that the subsequent conduct of plaintiff could not and did not alter or affect his right to maintain this action. The sustention of this theory would produce an anomalous situation. For it is an admitted fact that three or four days following delivery of the automobile, plaintiff received the daily report with all endorsements attached thereto. Thereby he was afforded the opportunity to determine the precise type of insurance which had been procured by defendant, and the exact cost thereof, which was $1.60 less than the premium for Class I collision insurance. At that time plaintiff had the right to institute an action to recover damages for breach of the contract, it being a firmly established principle that a cause of action arising out of contractual relations between the parties accrues as soon as the contract is breached. 1 C.J.S., Actions, § 124(b), p. 1387; 1 C.J., Actions, § 385, p. 1146; 13 C.J., Contracts, § 801, p. 699, 17 C.J.S., Contracts, § 531; Beard v. Citizens' Bank of Memphis, Mo.App., 37 S.W.2d 678, 679. Not only did plaintiff choose to retain the insurance which had been purchased, without objection, protest, or action of any kind, but he accepted and cashed the check sent to him by the defendant, which covered the difference in the cost of the insurance. Thus it must be held that the defendant's performance of the contractual obligation was accepted by plaintiff.

There is no merit in the contention made in the motion that the defense relied upon by defendant was not affirmatively pleaded. The fact is that the issue was hotly contested—it was the chief issue that was tried and submitted. By our code of civil procedure when issues not embraced in or raised by pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been properly raised by the pleadings. Section 509.500, RSMo 1949, V.A.M.S.; Payne v. White, Mo.App., 288 S.W.2d 6, 10; Duffy v. Barnhart Store Co., Mo.App., 202 S.W.2d 520, 526.

Plaintiff's motion for rehearing, or in the alternative to transfer to the Supreme Court of Missouri, is overruled.

ANDERSON, P. J., and ELMO B. HUNTER, Special Judge, concur.