Ronald B. PAUL, Appellant,

v.

**FARMLAND INDUSTRIES,
INC., Appellee.**

No. 93–3681.

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1994.

Decided Sept. 16, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Oct. 26, 1994.

Kelly L. McClelland, Liberty, MO, argued (Kelly L. McClelland and Kevin A. Graham, on the brief), for appellant.

William C. Martucci, Kansas City, MO, argued (William C. Martucci and Daniel B. Boatright, on the brief), for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Ronald B. Paul appeals an adverse judgment in this action for age discrimination in employment, fraud and breach of contract. We affirm.

## I. BACKGROUND

Paul was hired by Farmland in 1987 as Vice–President and Chief Information Officer and was terminated less than two years later. He filed this action alleging age discrimination in employment under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and breach of contract and fraud under Missouri law. At the close of the evidence, after a nine-day trial, the district court entered judgment as a matter of law in favor of Farmland on Paul's fraud and breach of contract claims. The age discrimination claim was submitted to the jury and the jury returned a verdict in favor of Farmland.

On appeal, Paul asserts that the district court erred in entering judgment as a matter of law on the fraud and breach of contract claims and erred with respect to the ADEA claim in receiving certain documents from Paul's personnel file from a former employer. He asserts that the improper evidence requires reversal of the jury verdict.

## II. DISCUSSION

We review the district court's interpretation of state law de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). In

reviewing the district court's grant of judgment as a matter of law, we apply the same standard as the district court. *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1263 (8th Cir.1994). We consider the evidence and the reasonable inferences that may be drawn from the evidence in the light most favorable to Paul. *Id.*

## A. Breach of Contract

 We agree with the district court that Paul did not present a submissible breach of contract claim. Paul relies on several documents to create an ostensible contract of employment for a term of three years.[1] These include a letter from the President of Farmland offering Paul the position and a long-term management incentive plan referenced in the letter. Nowhere in these documents do we find any expression, or even intimation, that either party contemplated employment for a term of years. The three-year management incentive plan merely outlines a component of Paul's compensation package. Under Missouri law, absent an employment contract to the contrary, an employee may be discharged for cause or without cause and the employee has no cause of action for wrongful discharge as a matter of law. *Johnson v. McDonnell Douglas, Corp.*, 745 S.W.2d 661, 662 (Mo.1988) (en banc). Because Paul has presented no evidence of a contract for a term of years, the district court properly entered judgment on his breach of contract claim.

1. The dissent seems to be confused about one of the basic questions in this appeal. The issue is not whether Paul was terminated for "cause." The dispute is over "a guaranteed period of employment until July 31, 1990," a three-year term. Appellant's brief at 3. Nothing stated by Farmland executive Rainey with reference to the incentive plan, quoted by the dissent, advances Paul's theory of a three-year contract. Similarly, Paul's testimony on his purported interpretation of the incentive plan, also quoted by the dissent, proves nothing. Interpretation of unambiguous language in a document such as this is for the court, not the plaintiff. Also, contrary to the implication of the last sentence of the dissent, there was a trial and the Judgment as a Matter of Law was entered after the court heard nine days of testimony.

2. Both sides cite *Bernoudy v. Dura–Bond Concrete Restoration, Inc.*, 828 F.2d 1316, 1318 (8th

## B. Fraud

Similarly, Paul did not prove a submissible case of fraud. Paul's fraud claim is premised on the contention that he was induced to leave another job and induced to work for Farmland by the false promise of Mr. James Rainey, Farmland's President, that Paul would have a contract of employment for three years. The district court found that an employee "may not assert a fraud claim that is essentially a cloaked contract claim." *Paul v. Farmland Indus., Inc.*, No. 90–0594–CV–W–1, Order at 7 (W.D.Mo. Sept. 27, 1993) (citing *Hanrahan v. Nashua Corp.*, 752 S.W.2d 878, 883 (Mo.Ct.App.1988)).

██ Under Missouri law, when a tort action arises from the breach of a contract, a plaintiff is precluded from maintaining both a breach of contract and a fraud claim against an employer. *Bernoudy v. Dura–Bond Concrete Restoration, Inc.*, 828 F.2d 1316, 1318 (8th Cir.1987). A fraud claim is permitted only if it arises from acts that are separate and distinct from the contract. *Id.* We need not resolve the issue of whether Paul presented a "cloaked" contract claim or a fraud claim based on separate and distinct acts, because we find, in any event, that Paul did not present a submissible case of fraud.[2]

██ Under Missouri law, the elements of common-law fraud are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the

Cir.1987) in support of their opposing positions on the issue of whether Missouri law allows a "cloaked" contract claim and whether this case fits that mold. In *Bernoudy*, we held that fraud in the negotiation of an employment contract can amount to a separate cause of action for fraud under Missouri law. *Id.* at 1318. We are inclined to believe that the present case is more akin to *Deschler v. Brown & Williamson Tobacco Co.*, 797 F.2d 695, 697 (8th Cir.1986), a case wherein we held the misrepresentations dealing with duration of employment were intimately related to an at-will employment contract thus barring suit for fraud. Here, the purported misrepresentations at the heart of the fraud claim are the same statements that form the basis of the alleged contract (as memorialized in the confirmatory letter).

hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, (9) and his consequent and proximate injury."

*Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1411 (8th Cir.1987) (quoting *Heitman v. Brown Group, Inc.,* 638 S.W.2d 316, 319 (Mo.Ct.App.1982)). Each of these elements must be established to make a submissible case of fraud, and failure to establish any one is fatal to recovery. *Id.*

▮▮▮ The critical element in a fraud case based on a statement of present intent is proof that the speaker, at the time of the utterance, actually did not intend to perform consistently with his words. *Craft v. Metromedia, Inc.,* 766 F.2d 1205, 1219 (8th Cir. 1985), *cert. denied,* 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Absent such an inconsistent intent there is no misrepresentation of fact or state of mind but only a breach of promise or failure to perform. *Id.* It is not enough that for any reason, good or bad, the speaker changes his mind and fails or refuses to carry his expressed intention into effect. *Id.* Whether the facts and circumstances justify a conclusion that a defendant knows a representation is false when made is ordinarily a question for the jury. *Jacobs,* 19 F.3d at 1263. Intent not to perform cannot be shown solely by nonperformance, it must be shown by other evidence. *Id.*

▮▮▮ Here, Paul presented no facts or circumstances which, if believed, would allow a jury to find that Farmland knew its representations, if made, were false when made. Paul relies only on the testimony of Rainey to establish his fraud claim. Having carefully reviewed the testimony of Rainey in the light most favorable to Paul and giving Paul the benefit of all favorable inferences, we conclude that there is insufficient evidence for a reasonable jury to have found that Rainey's expressed desire to establish a long-term employment relationship with Paul was false when it was made. The evidence points to nothing more than a later "change of mind" by Rainey when Paul did not live up to the company's expectations as Chief Information Officer. Because Paul failed to produce any evidence that Rainey did not intend

to perform consistently with his words, the district court properly dismissed the fraud claim. *See, e.g., Washburn,* 831 F.2d at 1412 (affirming entry of directed verdict on fraud claim for failure of proof under Missouri law).

## C. Admission of Evidence

▮▮▮ Paul further asserts that improper admission of his personnel file from a former employer requires reversal of the jury's age discrimination verdict. We give great deference to a district court's rulings on admissibility of evidence and will reverse only if the court has committed a clear abuse of discretion. *United States v. Jackson,* 914 F.2d 1050, 1053 (8th Cir.1990). We find no abuse of discretion here. Paul "opened the door" with respect to the personnel file by introducing evidence of his work record at his former employer. The evidence refuted Paul's contention that he could have continued working for his former employer.

▮▮▮ Moreover, a jury's verdict will not be disturbed absent a showing that the evidence was so prejudicial as to require a new trial which would be likely to produce a different result. *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1200 (8th Cir.1990). Given Paul's weak age discrimination case—Paul was over fifty when he was hired; he was terminated at age fifty-two by the same people who hired him, all of whom were older than he was—it is unlikely that the result would have been different if the evidence had been excluded. There was ample evidence that Paul was terminated because of poor performance and inability to achieve goals within the cost constraints placed upon him. Under the circumstances, we are unable to find that the evidence, even if improper, was so prejudicial that its exclusion would change the outcome of the trial.

## III. CONCLUSION

Accordingly, the judgment of the district court is affirmed.

HEANEY, Senior Circuit Judge, dissenting.

There is ample evidence in this record from which a jury could find that Farmland's

chief executive officer orally promised Paul that if he accepted employment with Farmland, he would not be terminated, except for cause, before August 31, 1990. There is also sufficient evidence to show that in reliance on that promise, Paul gave up his job in New Jersey and moved himself and his family to take the Farmland job. This evidence, if believed by a jury, is sufficient to establish an enforceable contract between Farmland and Paul, a contract that a jury could find was breached by Farmland when it discharged Paul before August 31, 1990. It follows that I would reverse and remand to the district court for further proceedings consistent with this dissent.

I have no quarrel with the majority with respect to the provisions of the written contract, and would agree with them that were it not for the oral promise of employment for a definite period of time, *Johnson v. McDonnell* would control, and that under Missouri law, Paul could not recover on a contract theory. Here, however, a jury could find that Farmland made an oral promise to Paul that he would have a job for three years.

Paul called the chief executive officer, James L. Rainey, as an adverse witness. That officer testified as follows:

Q: (By Mr. McClelland) So you did inform Mr. Paul that as part of his employment with Farmland, that he would be subject to being terminated, but only for cause, correct, sir?

A: Yes.

. . . .

Q: Okay. And you agree, will you not, that he was, according to this plan, not subject to termination unless it was for cause; that's what you testified to earlier, correct?

A: Yes.

Q: And you agree that the plan did cover the period through August 31, 1990, that he was under; is that correct?

A: Yes.

T. 1731, 1735. Later in the record, Rainey denied that he promised Paul a three-year job (T. 1739–43), but clearly a jury issue as to whether he had made an oral promise of three years of employment was raised. Paul himself testified as follows:

Q: (By Mr. McClelland) Okay. Would you please tell this jury after you received this document from Mr. Rainey and after he had explained it to you on September 19, 1987, what was the term of employment that he was employing for you?

A: Okay. He was employing me for the term beginning on October 12th 1987 through the end of this three-year plan, August 31, 1990.

. . . .

Q: Okay. So there were references to the three-year term going through 8–41–90 [8–31–90], not only on the first page, but also the second page of this plan, is that correct?

A: Yes, that's right.

Q: Is that consistent with what Mr. Rainey told you that you would be employed through 8–31–90?

A: Yes, it is.

. . . .

Q: Okay. Now Mr. Paul, why was it important to you that you be able to have an opportunity to spend three years at Farmland in this new job of vice-president Management Information Services?

A: Well, it was important because, and I was changing locations, moving from New Jersey. It was important not just to have, in making this kind of change with the amount of work that Mr. Rainey has laid out, in that he had indicated that Farmland was ten years behind in our information systems, there was quite a bit of work to do to get Farmland caught up with the entire work program in MIS. And when Mr. Rainey offered me three years employment with the bonus plans, you know, I was very happy about it, I was very delighted with it.

I thought that, you know, there is an opportunity and an offer that, it's not just a typical offer, but it was a very exceptional offer, to get the annual bonuses that were there. And when he had lined out the three-year bonus plan

and showed me the dates. And he had taken me through, you know, every one of these pages and he went through the specific criteria, he went through the results, pay-out examples. He was very concerned about me understanding clearly what the plan was, and he went through it in great detail.

And after he had offered this three-year employment plan, the one thing I asked him to do was to put our agreement in writing, so I was, you know, very pleased with the offer that he had made and everything else that he had, you know, offered with it.

Q: Mr. Paul, prior to this time, was it normal for you to get an offer of employment from an employer that set forth a specified time period of three years, was that something normally that you had done before in the past?

A: No, I have not.

Q: Okay. But in this case, you were being asked to do something exceptional at Farmland; were you not?

A: Yes, I believe so.

Q: You were asked to catch up ten years of backlog in applications at Farmland, correct?

A: That's correct.

Q: Did you know at that time that it could not be done in one year?

A: Yes.

Q: Did you know at that time that it couldn't be done in two years?

A: It didn't appear to be a two-year project.

Q: And did you discuss that with Mr. Rainey, that you wanted to make sure that he gave you sufficient time to accomplish all of those objectives, and it would take at least three years to get those implemented?

A: I believe in our discussions that he may have indicated that, in our discussions one of us may have indicated that we would be looking at three or four years to try to get everything back on par.

Q: Okay. Did you rely on representations from Mr. Rainey that you would be employed for this three-year period, at a minimum?

A: Yes, I sure did.

Q: Did he make that representation to you?

A: Yes, he did.

Q: And didn't he even indicate to you that not only after this three-year period for annual and cumulative bonuses that follows this one, if the board approves it, correct?

A: Yes, he did. He also indicated to me that he was hoping that I was not looking at this as a one- or two-year position, that I was looking at accepting the position with Farmland Industries for the long-term; and I told him that I was.

And part of the plan here that he explained and the philosophies was to tie individuals to the company for the long term. And what he was trying to do was build a management team to help build Farmland's entire management and specifically information systems.

*Id.* at 155–56, 160, 160–63.

There remains only the question of whether the Missouri Statute of Frauds, which provides that contracts that cannot be performed within one year must be in writing, Mo.Rev.Stat. § 432.010, bars recovery in this case. In my view, it does not. If the party to whom the promise has been made fully performs his part of the bargain, he can enforce the contract. *See Performance of Personal Service as a Ground for Taking Oral Contracts Out of the Statute of Frauds,* 26 Wash.U.L.Q. 275 (1941); *Services as Part Performance to Take an Oral Contract Out of the Statute of Frauds,* 21 St. Louis L.Rev. 262 (1936). Here a jury could certainly find that Paul had fully performed by giving up his old job, moving to a new community, taking up the new job with Farmland, and performing it satisfactorily.

In my view, Paul can also recover on a promissory estoppel theory. *See Bower v. AT & T Technologies, Inc.,* 852 F.2d 361 (8th Cir.1988).

I would reverse and remand with directions to proceed to trial.