# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1832

_____

Vernon E. Spencer,     *

       Appellee,     *

    v.                 *

Stuart Hall Company, Inc., a     *
Missouri corporation; Newell     *
Company, a Delaware corporation,     *

       Appellants.     *

Appeal from the United States
District Court for the
Western District of Missouri.

_____

Submitted: November 18, 1998
Filed: April 12, 1999

_____

Before McMILLIAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Vernon Spencer received a favorable jury verdict on the age discrimination claim he brought against Stuart Hall Company, Inc., and Newell Company (collectively Stuart Hall) after he was terminated during a reduction in force (RIF).

Stuart Hall appeals from the district court's[1] denial of its motion for judgment as a matter of law (JAML). We affirm.

## I.

Because this is an appeal from the denial of a motion for JAML, we consider the facts in the light most favorable to the winning party, construing any ambiguities and making any reasonable inferences in favor of the verdict. See Ballard v. River Fleets, Inc.,149 F.3d 829, 831 (8th Cir. 1998). Viewed in this light, the relevant facts are as follows.

Spencer worked for Stuart Hall[2] for 25 years, most recently as a production supervisor. In May 1995, Wal-Mart canceled a large order, costing Stuart Hall 40 percent of its sales. Within a month, Stuart Hall shut down its third shift, laying off 100 of 325 production workers and 3 of 10 production supervisors. Gordon Kirsch, Vice-President of Manufacturing, was responsible for the final layoff decision regarding the supervisors, with input from Ed Schweikhardt and Ernie Mautino, two plant managers. In addition to the three supervisors originally laid off, Stuart Hall terminated a fourth supervisor, Jim Wallace, a week after the layoff. Stuart Hall laid off one supervisor from each of the three production lines, though it claims that it laid off supervisors by comparing all ten and laying off the four worst performers (Stuart Hall contends that Wallace was part of the RIF). Spencer, age 54 at the time of the layoff, was on the envelope line. The envelope line supervisors who were not laid off were Don Ponak, age 38, and Brett Broadaway, age 33.

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[2]Stuart Hall manufactures paper products such as school and office supplies. Newell Company bought Stuart Hall in 1992.

Stuart Hall claimed that it based its layoff decision on each supervisor's two most recent performance evaluations. Spencer had two "provisional" ratings;[3] according to Stuart Hall, no other supervisor had ratings as low as Spencer did. Though Stuart Hall claimed that Ponak had only one provisional rating, there was evidence that he actually had two provisional ratings and that Stuart Hall failed to produce the evaluation from that rating, using a less recent rating of "good" in its place. Two of the three supervisors who were laid off were over age 40 and were the oldest of all the supervisors; the third laid off supervisor was age 29.

Spencer brought this age discrimination claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994). The district court initially granted Stuart Hall's motion in limine and excluded evidence of statements allegedly made by prior managers indicating age bias. However, the district court reversed its ruling during trial and admitted the evidence. The jury returned a verdict in favor of Spencer, finding that Stuart Hall's actions were willful. The district court awarded Spencer back pay of $39,573, front pay of $12,499, liquidated damages of $39,573, and attorney's fees and costs of $57,607. Stuart Hall moved for JAML, or in the alternative, for a new trial. The district court denied Stuart Hall's motion and Stuart Hall now appeals.

## II.

We review de novo the denial of a motion for JAML, applying the same standards applied by the district court. See Ballard, 149 F.3d at 831. In so doing, we must "(1) resolve direct factual conflicts in favor of [Spencer]; (2) assume as true all facts supporting [Spencer] which the evidence tended to prove; (3) give [Spencer] the benefit of all reasonable inferences; and (4) affirm the denial of the motion if the

---

[3]Stuart Hall evaluated its employees on a six-level rating system: exceptional, outstanding, good, competent, provisional, and unsatisfactory.

evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn." Id. (citation and internal quotations omitted).

## A.    Violation of the ADEA

An ADEA claim can arise either as a pretext claim, as a mixed motives claim, or as a RIF claim.  Each type of ADEA claim has slightly different elements.  Cf. Bevan v. Honeywell, Inc., 118 F.3d 603, 609 n.1 (8th Cir. 1997).  To prove his RIF claim, Spencer must show that:  (1) he was within the protected class (over age 40); (2) his performance met his employer's legitimate expectations; (3) he was discharged; and (4) there was an additional showing of age as a factor in the discharge decision.  See Cramer v. McDonnell Douglas Corp., 120 F.3d 874, 876 (8th Cir. 1997).  Our focus in an appeal from the denial of a JAML motion following a jury verdict is whether Spencer met his ultimate burden of showing intentional age discrimination, which requires more than merely discrediting Stuart Hall's proffered reason for the adverse employment decision.  Spencer must also prove that the proffered reason was a pretext for age discrimination.  See Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 801 (8th Cir. 1994).

The evidence at trial presented two possible scenarios regarding the RIF decisional process.  Stuart Hall claims that it laid off the four worst performing supervisors.  There was also evidence, however, that only three supervisors were laid off as part of the RIF, one from each of the three production lines.  Kirsch, Mautino, and Schweikhardt all changed their testimony at trial from the testimony they gave during depositions and through affidavits.  Kirsch testified during his deposition that he first ranked the ten supervisors according to their two most recent performance evaluations (Spencer was ranked worst) and that he then discussed each supervisor's performance with Mautino and Schweikhardt to confirm that Spencer was in fact the worst of the ten.  Mautino and Schweikhardt corroborated this testimony in their summary judgment affidavits.  At trial, however, all three changed their stories to say

4

that they first met to discuss and rank the managers based on their experiences with the supervisors and then, after determining that Spencer was the worst, reviewed the performance evaluations to confirm their initial inclinations. Where conflicting evidence is presented at trial, it is the jury rather than this court which assesses the credibility of the witnesses and decides which version to believe. See Curtis v. Electronics & Space Corp., 113 F.3d 1498, 1502 (8th Cir. 1997). Based on these inconsistencies, which were brought out during trial, the jury could have discredited the Stuart Hall managers' testimony and the basis they gave for laying off Spencer.

While we deem it a close call, we conclude that the evidence in this case was sufficient to support the jury verdict. From all of the evidence, the jury reasonably could have found that Stuart Hall laid off one supervisor from each of the three production lines, rather than basing the decision on the overall performance of all ten supervisors. Spencer was the oldest supervisor in his department with significantly greater experience and seniority than either Ponak or Broadaway, the other two supervisors in Spencer's department. Of the three supervisors initially laid off, two were the oldest of all the supervisors. There was evidence that younger employees received preferential shift assignments and were not written up for disciplinary problems similar to those for which Spencer was written up. However, there was also evidence that older workers were given favorable shift assignments while younger workers were given unfavorable assignments. We cannot say the evidence points all one way.

In addition to this circumstantial evidence of age discrimination, Stuart Hall's layoff policy required employees of equal qualifications to be laid off based on seniority. The performance evaluations used in the layoff decision for Ponak, who had less seniority than Spencer, were from January 1992 (good) and January 1994 (provisional). Though no evaluation from early 1995 was ever produced for Ponak, payroll records reflected that Ponak did not receive a raise in February 1995 because

5

of a provisional rating. This evidence, which we must read in the light most favorable to the verdict, supports a jury finding that Ponak had received two provisional ratings, as had Spencer, but that Stuart Hall ignored Ponak's most recent provisional rating to avoid following its seniority based tie breaker layoff policy in order to lay off the older Spencer.[4] We hold that reasonable jurors could differ as to the conclusions to be drawn from all of the evidence and agree with the district court that the evidence supports the jury's verdict finding Stuart Hall liable for age discrimination under the ADEA.

## B.     Liquidated Damages Under the ADEA

An improperly dismissed employee is entitled to a double recovery, called liquidated damages, if he proves that his employer willfully violated the ADEA. See 29 U.S.C. § 626(b). The standard for proving willfulness "is simply whether 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" See Brown v. Stites Concrete, Inc., 994 F.2d 553, 559 (8th Cir. 1993) (en banc) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993)). This showing does not require any heightened quantum or quality of evidence beyond that already established as long as all the evidence satisfies the distinct standard for willfulness. Id. at 560. "A violation of the ADEA does not require any particular mental state, but the award of liquidated damages under the

---

[4]Stuart Hall argues that even if Ponak and Spencer both had two provisional ratings, Spencer still would have been laid off because he would still have been one of the four worst performers. This argument ignores the evidence that Stuart Hall actually laid off one supervisor from each production line. If the jury believed this scenario, then Ponak, who was on the same production line as Spencer, would have been laid off and Spencer would have been retained under Stuart Hall's layoff policy. The jury is free to choose which story it believes. We will not reweigh or reevaluate the credibility of the evidence. See Ballard, 149 F.3d at 831.

ADEA does." Glover v. McDonnell Douglas Corp., 12 F.3d 845, 849 (8th Cir.), cert. denied, 511 U.S. 1070 (1994).

The ADEA contains two tiers of liability. It awards compensatory damages when an employer violates the statute and liquidated damages when that violation is willful. Although the statute was meant to create this two-tiered liability scheme, Biggins makes clear that our focus is not on ensuring that a heightened evidentiary requirement keeps the two-tiered scheme intact. Rather, we are only to determine whether the employer willfully violated the ADEA, thereby exposing the employer to additional damages. Biggins, 507 U.S. at 616 ("The ADEA does not provide for liquidated damages 'where consistent with the principle of a two-tiered liability scheme.' It provides for liquidated damages where the violation was 'willful.'"); see also Brown, 994 F.2d at 560. For example, liquidated damages are inappropriate where "an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision." Biggins, 507 U.S. at 616. See also Maschka v. Genuine Parts Co., 122 F.3d 566, 572 (8th Cir. 1997) (finding liquidated damages appropriate where the employer "presented no evidence that it made its decision under the erroneous belief that it was entitled to an exception" under the ADEA); Curtis, 113 F.3d at 1503 (same).

This case is one of those situations where the same evidence--although thin--that supports liability under the ADEA also supports an award of liquidated damages for its willful violation. Reading the evidence in the light most favorable to the verdict, the jury could have found that Stuart Hall decisionmakers ignored Ponak's second provisional rating in order to justify laying off Spencer, who was older and had more seniority than Ponak. Though a showing of equal competence followed by preference for a younger employee does not meet the showing required to establish an intent to discriminate, see Lewis v. Aerospace Comm. Credit Union, 114 F.3d 745, 749 (8th Cir. 1997), cert. denied, 118 S. Ct. 1392 (1998), Stuart Hall's policy required that the company make layoff decisions based on seniority with respect to

7

equally qualified employees. Additionally, Kirsch discussed whether Spencer's age would create an Equal Employment Opportunity problem with the Vice President of Human Resources. It was for the jury to determine whether this evidence weighed in favor of or against the employer. Compare Nelson, 26 F.3d at 803 ("[T]here was evidence that Boatmen's was more than merely aware of the ADEA statute. Its human resources director had both experience with and training in the statute.") with Glover, 12 F.3d at 849 (rejecting the argument that "because Barbeau had been briefed about the basic requirements and prohibitions of the ADEA, . . . he must have committed his violation recklessly."). From this evidence, and the jury's credibility assessments, the jury was free to find that Stuart Hall took steps to hide its true intent, knowing, or at least recklessly disregarding, that its actions violated the ADEA. Cf. Newhouse v. McCormick & Co., Inc., 110 F.3d 635, 640 (8th Cir. 1997) (concluding that liquidated damages were supported by evidence that an employer acted in such a way that it would appear that the employer was complying with the ADEA). We cannot say as a matter of law that no reasonable juror could have returned a verdict for Spencer on the issue of liquidated damages.

## C.    Admission of Stray Remarks

Stuart Hall argues that the district court erred in admitting evidence of alleged "stray remarks" by two former employees. We review a district court's admission of evidence for a clear abuse of discretion. See Paul v. Farmland Indus., Inc., 37 F.3d 1274, 1277 (8th Cir. 1994), cert. denied, 514 U.S. 1017 (1995). We will only disturb a jury's verdict if the evidence is so prejudicial that its exclusion would likely produce a different result in a new trial. Id.

The "stray remarks" were two different statements allegedly made by John Rogers and Rick Arentson to Spencer in 1993, to the effect that an older supervisor was moved to third shift to make room for younger workers coming up. The district court originally precluded the evidence upon Stuart Hall's motion in limine. During

trial, however, Stuart Hall's counsel cross-examined Spencer about his theory that Stuart Hall managers had conspired to fire him because of his age two years before he was actually laid off. (See Trial Tr. at 140-42.) Spencer's counsel requested a bench conference, during which the court agreed that Stuart Hall had opened the door to Rogers' and Arentson's alleged statements and that Spencer's counsel would be permitted to address the issue on redirect. (See id. at 143-45.) Because the judge was going to allow the evidence on redirect, Stuart Hall's counsel elicited it during the resumed cross-examination. Upon receiving Spencer's answer about the younger employees' remarks, Stuart Hall's counsel introduced evidence that neither Arentson nor Rogers were involved in the layoff decision because neither was employed by Stuart Hall at the time of the layoff. Arentson and Rogers both later testified that they did not make the alleged remarks, that Rogers was not even employed at the time of his alleged remark, and that neither was employed at the time of the layoff.

Remarks tending to show age animus that are remote in time and made by nondecisionmakers are insufficient to establish the "additional showing" of intentional age discrimination needed to support an age discrimination claim in the context of a reduction in force. See Walton v. McDonnell Douglas Corp., 167 F.3d 423, 427-28 (8th Cir. 1999). The lack of probativeness will generally support exclusion of the evidence because it also tends to be highly prejudicial. See Slathar v. Sather Trucking Corp., 78 F.3d 415, 420 (8th Cir.) (affirming district court's exclusion of stray remarks by nondecisionmakers that would be quite prejudicial but provide no evidence of age discrimination), cert. denied, 117 S. Ct. 179 (1996). However, we do not think that the district court abused its discretion in admitting the testimony in this case.

Stuart Hall's counsel repeatedly challenged Spencer's conspiracy theory, indicating defense counsel's doubt that Spencer's theory was believable. Defense counsel questioned Spencer's credibility by grilling him about his basis for believing a conspiracy existed to get rid of him because of his age two years before he was laid

off.  (See Trial Tr. at 142.)  Spencer was unable to provide a complete and coherent answer without referring to Rogers' and Arentson's alleged statements, which he was under strict orders not to discuss based on the court's in limine ruling.  We agree that Stuart Hall opened the door to the admission of these statements and the district court acted within its broad discretion by admitting the evidence within the scope of redirect.  See United States v. Bilzerian, 926 F.2d 1285, 1296 (2d Cir.) (evidence otherwise inadmissable as too prejudicial under Rule 403 may be "admissible to rebut testimony elicited on cross examination that created a false impression"), cert. denied, 502 U.S. 813 (1991); United States v. Womochil, 778 F.2d 1311, 1317 (8th Cir. 1985) (finding no abuse of district court's discretion in allowing "otherwise inadmissible evidence on redirect to clarify the issue" when opposing counsel had left a false impression after cross-examination).  The admission of the stray remarks allegedly made by Rogers and Arentson does not warrant a new trial.

## III.

For the foregoing reasons, we affirm the district court's denial of Stuart Hall's motion for judgment as a matter of law.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

10