# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1851

_____

| | | |
|---|---|---|
| Safety National Casualty Corporation, | * * * | |
| Appellee, | * * | Appeal from the United States District Court for the |
| v. | * * | Eastern District of Missouri. |
| Austin Resolutions, Inc., | * * | |
| Appellant. | * | |

_____

Submitted: January 12, 2011
Filed: April 12, 2011

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Austin Resolutions, Inc. ("Austin") appeals the decision of the district court[1] denying its motion for a new trial after a jury rendered a verdict in favor of plaintiff Safety National Casualty Corporation ("Safety National") on claims arising from a business dispute between the parties. For the reasons discussed below, we affirm.

---

[1]The Honorable Mary Ann Medler, Chief United States Magistrate Judge for the Eastern District of Missouri, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.    BACKGROUND

Safety National is in the business of providing excess workers' compensation insurance to self-insured companies.  One such insured, Dyer Nursing Home, faced a workers' compensation claim from an employee who had been riding in a car involved in an automobile accident while en route to an off-site training session. According to information received by Safety National, the employee had incurred a series of related medical bills totaling $361,745 at Regional Medical Center in Memphis, Tennessee.  Safety National desired to negotiate a discount in the amount of that bill.

Austin is in the business of negotiating with medical providers to reduce such high-dollar medical bills.  In March 2005, Safety National contracted with Austin to negotiate such a reduction of the employee's medical bills with Regional Medical Center.  Per the terms of the parties' oral agreement, Austin was to be paid 25 percent of the difference between the listed charges, which Safety National believed to be $361,745, and the reduced amount negotiated by Austin.

To the parties' surprise, when Austin contacted Regional Medical Center about the bill, Regional Medical Center reported a balance due of only $2,317.  The parties did not know how the balance had been reduced.  At Safety National's request, Austin obtained a signed written agreement from Regional Medical Center stating that, in exchange for Austin's payment of that outstanding balance, Regional Medical Center would not seek payment of any additional amounts from the employee.  Safety National then requested that Austin obtain an amendment to that written agreement adding that Regional Medical Center also would not seek payment of any additional amounts from Dyer Nursing Home.  Austin obtained a signed amended agreement. Safety National hoped that this agreement, which the parties call a "lien waiver," would protect it from reimbursement claims from any third parties who had paid down the original $361,745 balance.  In May 2005, Austin submitted an invoice to Safety National showing a "negotiated discount" of $359,428, and a resulting 25 percent fee

of $89,857. Austin sent a copy of the invoice again in February 2006. Safety National did not pay the invoice.

On June 1, 2006, Safety National learned that State Farm, the insurer of the driver of the car in which the employee had been injured, had obtained a judgment ordering Dyer Nursing Home to reimburse $66,667 that State Farm had paid on the employee's Regional Medical Center bills. *See Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 531 n.3, 537 (Tenn. 2006). The order also noted that the nursing home, and by implication its excess insurer Safety National, would be responsible for all other medical expenses incurred by the employee. *Id.* at 537. Safety National asked Austin to render an opinion as to whether the "lien waiver" obtained by Austin would shield it from reimbursement claims from parties other than State Farm. Austin responded on June 5 by resubmitting the $89,857.21 invoice to Safety National and threatening to contact Regional Medical Center to rescind the "lien waiver" if the invoice was not paid by June 9. Stephen Peacock, the claims analyst for Safety National, claimed that the parties long had recognized the inaccuracy of the invoiced amount, e-mailing Arden Tabor, President of Austin, that "you and I talked on several occasions that we need to know the amount of the original Regional [Medical Center] bill and why or how it was reduced so [Austin's] fee could be determined." Peacock objected to Austin treating the "lien waiver" as a "hostage" to collect on the original invoice. However, after Austin agreed to subtract the $66,667 reimbursement to State Farm from the invoiced "negotiated discount," Safety National paid a 25 percent fee of $73,190.

In June 2007, after unsuccessfully asserting the "lien waiver" as a defense, Safety National was ordered by a Tennessee court to reimburse another third party, the employee's private medical insurer, for $146,511 that it had paid on the employee's Regional Medical Center bills. Safety National asked Austin to deduct this amount from the invoiced "negotiated discount" and refund 25 percent of this amount from the $73,190 fee. Austin refused, and in May 2008 Safety National filed suit in state court in Missouri, alleging breach of contract, breach of the implied

-3-

covenant of good faith and fair dealing, money had and received, and fraudulent and negligent misrepresentation. Austin removed the suit to the federal district court for the Eastern District of Missouri, asserting diversity jurisdiction.[2]

At trial, Safety National's theory of the case was that Austin did not negotiate any discount on the $361,745 owed to Regional Medical Center, but rather that it simply discovered that the balance already had been reduced to $2,317 through unknown means. Because the parties' contract called for Austin to receive 25 percent of the discount Austin negotiated, Safety National contended that Austin had earned no fee. Austin, on the other hand, requested a jury instruction allowing the jury to find that Safety National "accepted" Austin's "cost containment services" as performed in accordance with the parties' agreement. The district court denied Austin's instruction as legally inaccurate and unsupported by the evidence. The jury found for Safety National on all five counts and awarded a return of the entire fee paid, $73,190. The district court denied Austin's motions for judgment as a matter of law and for a new trial. Austin appeals only the denial of its motion for new trial, arguing that the district court erred by refusing Austin's proposed jury instruction and by admitting into evidence a letter that referred to the June 2007 Tennessee court order, without the order itself being attached.

## II.   DISCUSSION

Austin first contends that the district court erred by denying its motion for a new trial based on the denial of a requested jury instruction. We review the rejection

---

[2]The petition established an amount in controversy exceeding $75,000 because it sought as damages not only the $73,190 fee paid, but also expenses incurred by Safety National as a result of the Tennessee litigation due to allegedly false representations about the effectiveness of the lien waiver.

of a proposed jury instruction for abuse of discretion. *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 499 (8th Cir. 2010). The "failure to give a proposed instruction must result in prejudice to the requesting party before a new trial will be ordered." *Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 497 (8th Cir. 1998). "A party is entitled to a jury instruction on its theory of the case if the instruction is both legally accurate and supported by the evidence." *See Friedman & Friedman*, 606 F.3d at 499. Because our jurisdiction is based upon diversity of citizenship, state law governs the substance of the jury instructions. *Id.* The parties agree that Missouri law applies.

On appeal, Austin argues that the legal basis for its proposed instruction is that payment of an invoice may be sufficient to prove one party's acceptance of another party's performance under a contract. Austin notes that after it reported to Safety National that the balance due was only $2,317, Safety National asked Austin for the separate service of obtaining the "lien waiver" purporting to release the insured nursing home from any further liability on the employee's bills. Austin contends that Safety National's eventual payment of $73,190 was compensation for Austin's services in obtaining the "lien waiver," rather than for negotiation of a discount.

Austin's theory presupposes that the parties modified their original contract or created a secondary contract to substitute a duty to obtain a "lien waiver" for Austin's original duty to negotiate a discount. Unfortunately for Austin, neither the proposed instruction nor any of the instructions given to the jury addresses the existence or terms of this alleged modified or secondary agreement. The entirety of Austin's proposed instruction reads: "Your verdict must be for Defendant if you believe that Plaintiff accepted Defendant's cost containment services which were performed in accordance with the agreement between Plaintiff and Defendant." Yet, Austin did not object to the only instruction that defined an "agreement" for the jury, which instruction stated that Austin's duty was solely "to negotiate the amount of medical bills owed to Regional Medical Center on [the employee's] account . . . and to charge a fee based upon 25% of the amount that the defendant saved the plaintiff by reducing

-5-

the amount owed." Because the proposed instruction purports to address acceptance of some "lien waiver" service agreement that was never defined for the jury, it is not legally accurate under Missouri law. *See Centerre Bank of Kan. City, Nat'l Ass'n v. Angle*, 976 S.W.2d 608, 617 (Mo. Ct. App. 1998) (finding reversible error in a jury instruction that "did not specify whether the agreement which was allegedly violated was the corporate agreement, the partnership agreement, or yet some other agreement between the parties").

Austin contends that the proposed instruction adequately applies the rule of *Woolfolk v. Jack Kennedy Chevrolet Co.*, 296 S.W.2d 511, 514 (Mo. Ct. App. 1956), that a plaintiff's demonstrated acceptance of a defendant's performance, as rendered, defeats the plaintiff's claim of breach.[3] *Woolfolk*, however, highlights the legal inaccuracy of Austin's proposed instruction. Before the *Woolfolk* court reached the rule relied upon by Austin, the court stated that "[a]t the outset we must determine whether a contract came into existence" and then determined the terms of that contract based on a purchase order, invoice, and chattel mortgage. *Id.* Here, in contrast, the proposed instruction does not require the jury to find that the alleged modified or secondary agreement came into existence and gives the jury no hint as to what the relevant terms of such an agreement would have been.

Moreover, even if Austin had submitted a legally accurate proposed instruction befitting its theory, it would not have been supported by the evidence adduced at trial. Austin points to no evidence that the $73,190 fee paid by Safety National was based on anything other than 25 percent of the alleged discount negotiated by Austin, as set forth in the parties' original agreement. The invoice Austin repeatedly submitted to Safety National contained the heading "Negotiated Discount," listed a "Discount" of

---

[3]Austin also cited Missouri Approved Instruction ("MAI") 32.14, entitled "Payment for Services Furnished Decedent," to the district court as legal authority for its proposed instruction. Austin does not explain how payment for services furnished to Safety National is analogous to payment for services furnished to a decedent.

$359,428, and stated a "Resolution Fee" of exactly 25 percent of the listed "Discount." Peacock testified that throughout the dispute, he understood that Austin's fee demand was based completely on the amount of the "negotiated discount." Furthermore, after Safety National's insured was ordered to reimburse State Farm for an additional $66,667 of the Regional Medical Center bill, Austin reduced the fee by exactly 25 percent of that amount. This hardly comports with the theory that the fee was charged for the discrete, separate service of obtaining the "lien waiver" in the first place. *See Centerre Bank*, 976 S.W.2d at 617.[4]

Because Austin's proposed instruction does not accurately state the applicable law and is not supported by the evidence at trial, the district court did not abuse its discretion in denying the proposed instruction. *See Friedman & Friedman*, 606 F.3d at 499.

Austin next claims that a new trial is warranted based on the admission into evidence, over Austin's hearsay objection, of a letter from Peacock of Safety National to Tabor of Austin. A district court's rulings on admissibility of evidence are entitled to great deference, and we will reverse only if the district court has committed a clear abuse of discretion. *Paul v. Farmland Indus., Inc.*, 37 F.3d 1274, 1277 (8th Cir. 1994). "Moreover, a jury's verdict will not be disturbed absent a showing that the evidence was so prejudicial as to require a new trial which would be likely to produce a different result." *Id.*

---

[4]To the extent, if any, that obtaining the "lien waiver" was a valuable service not encompassed within the parties' original agreement, Austin may have been entitled to payment of some reasonable amount for that service under a theory of *quantum meruit*. Austin did not present that theory at trial, however, and the proposed instruction does not present the elements of a *quantum meruit* claim, nor does there appear to be any evidence that the reasonable value of the additional service was remotely close to $73,190. *See Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 206 (Mo. Ct. App. 2006).

The letter referred to the Tennessee court order finding the "lien waiver" ineffective and awarding $146,511 reimbursement from Safety National to the employee's private medical insurer. Although the letter indicates that a copy of the court order is attached, the letter was admitted into evidence without the order. In the letter, Peacock asked for a partial refund of the fee in the amount of 25 percent of the $146,511 now owed to the private medical insurer. Austin contends that the letter was prejudicial hearsay because it conveyed Peacock's out-of-court characterization of the court order to the jury, without affording an opportunity for the jury to review the order and reach its own conclusions.

We agree with the district court that the letter was not hearsay because it was admitted to show Peacock's state of mind at the time, not for the truth of its characterization of the Tennessee court order. *See Am. Eagle Ins. Co. v. Thompson*, 85 F.3d 327, 332 (8th Cir. 1996). In particular, the letter was admitted to demonstrate Peacock's understanding at that time that the fee charged by Austin had been based on 25 percent of the alleged negotiated discount. Therefore, there was no clear abuse of discretion in admitting the letter.

Even had the letter constituted hearsay, Austin cannot show that the exclusion of the letter would have affected the jury's determinative findings: the parties' agreement provided a fee to Austin based on the savings it negotiated, Austin did not negotiate any savings on the employee's medical bills, and thus Austin earned no fee under the terms of the parties' agreement.[5] While Austin argues that unfair prejudice

[5]These findings were required by Instruction No. 14, the verdict director for the breach of contract claim:

[Y]our verdict must be for the plaintiff if you believe:

First, the plaintiff and the defendant entered into an agreement whereby the defendant agreed to negotiate the amount of medical bills owed to Regional Medical Center on [the employee's] account in an effort to

arose from the revelation in the letter that another court had found the "lien waiver" procured by Austin to be ineffective, the "lien waiver" was at best tangential to the terms of the agreement on which the jury based its verdict. As discussed above, the "lien waiver" was not mentioned in any jury instruction. Furthermore, Austin made no attempt to exclude other evidence referring to the same court order. A subsequent letter from Austin to Safety National that referred to that same court order was admitted without objection, and Peacock testified at trial as to his contemporaneous understanding of that court order and the effectiveness of the "lien waiver," again without objection. *See Johnson v. Richardson*, 701 F.2d 753, 756 (8th Cir. 1983) (finding no reversible error in the admission of alleged hearsay on "an extremely tangential issue" which was "addressed in full" by other evidence). In short, there is no showing that the letter, even if hearsay, was "so prejudicial as to require a new trial which would be likely to produce a different result." *Paul*, 37 F.3d at 1277.

## III.   CONCLUSION

For the foregoing reasons, we affirm the district court's judgment denying Austin's motion for new trial.

_____

---

reduce the amount owed and to charge a fee based upon 25% of the amount that the defendant saved the plaintiff by reducing the amount owed to Regional Medical Center on the account and the plaintiff agreed to pay a fee of 25% of the amount that the defendant saved, and

Second, the plaintiff performed its agreement, and

Third, the defendant failed to perform its agreement, and

Fourth, the plaintiff was thereby damaged.