# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1794

_____

Iris Clegg, individually and as the
personal representative of the estate of
Ethon Allen Boyer,

        Appellant,

    v.

U.S. Natural Resources, Inc., doing
business as USNR; USNR, doing
business as Applied Theory; USNR,
doing business as Friedrich Air
Conditioning & Refrigeration; USNR,
doing business as Interstate Machinery
Erectors; USNR, doing business as
Irvington-Moore Schurman Machine;
John Does 1-5,

        Appellees.

\* \
\* \
\* \
\* \
\* \
\* \
\*   Appeal from the United States \
\*   District Court for the \
\*   Western District of Arkansas. \
\* \
\*   [UNPUBLISHED] \
\* \
\* \
\* \
\* \
\* \
\* \
\* \
\* \
\* \
\*

_____

Submitted: January 10, 2012
Filed: June 28, 2012

_____

Before WOLLMAN, LOKEN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Ethon Boyer was working at an aluminum plant in 2006 when an explosion tragically ended his life. Following the incident, Iris Clegg, Boyer's mother, brought an action against U.S. Natural Resources, Inc. ("USNR"), asserting that USNR designed and manufactured a conveyor system used in the plant, that the system was defective, and that the defect resulted in a "molten aluminum water explosion." Clegg appeals a jury verdict in favor of USNR, and we affirm for the reasons stated below.

At trial, USNR asserted various independent defenses. One of these was that the explosion was not a molten aluminum water explosion—which, the parties agree, can occur when molten aluminum spills into water and certain conditions are satisfied—but instead was the result of some other cause, potentially a bomb. Over Clegg's objection, the district court admitted four expert reports relating to the cause of the explosion. After deliberating for less than two hours, the jury returned a verdict in favor of USNR. Clegg now appeals, arguing that the district court[1] impermissibly admitted the four reports and impermissibly allowed the jury to have those reports during its deliberations. As a result, Clegg asks that we remand for a new trial with the reports excluded from evidence.

"A district court's rulings on admissibility of evidence are entitled to great deference, and we will reverse only if the district court has committed a clear abuse of discretion." *Safety Nat'l Cas. Corp. v. Austin Resolutions, Inc.*, 639 F.3d 498, 503 (8th Cir. 2011). We assume that the district court committed a clear abuse of discretion by admitting the reports and allowing the reports to go to the jury during deliberations. We conclude, however, that such error was harmless. "To be harmless

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

error, the admitted evidence must not have had a substantial influence on the verdict." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2008). "[A] jury's verdict will not be disturbed absent a showing that the evidence was so prejudicial as to require a new trial which would be likely to produce a different result." *Safety Nat'l*, 639 F.3d at 503 (quoting *Paul v. Farmland Indus., Inc.*, 37 F.3d 1274, 1277 (8th Cir. 1994)).

The first report was a compilation of witness statements prepared by Dennis Clark. During trial, Clegg reversed course and stated that she was not objecting to admission of Clark's report, thus waiving her objection to its admissibility. *See United States v. Slagg*, 651 F.3d 832, 848-49 (8th Cir. 2011).[2] We therefore decline to consider Clegg's arguments regarding the admissibility of Clark's report, but we also note that the jury heard much of the same information contained in Clark's report through testimony.

John Jacoby prepared the second report. Some of Jacoby's deposition testimony was introduced at trial without objection, and that testimony expressed substantially everything in Jacoby's report that was harmful to Clegg's position in the litigation. In fact, Clegg states on appeal that Jacoby's testimony "summarily restated what was contained within a letter report he had written." The essence of the third report, prepared by Eric Uffman, was that tests of samples recovered from the plant indicated the presence of a particular substance—which other testimony established is found in the explosive C-4—but the portion of Uffman's deposition testimony read to the jury communicated that same information.

---

[2]Clegg renewed her objection to Clark's report at a later time in the trial, but only after withdrawing the objection and relying on information in the report favorable to her case. We decline to entertain this untimely effort.

The fourth report, prepared by Thomas Traubert, contained multiple pieces of information and opinions adverse to Clegg's case. However, the jury heard testimony covering much of the report, including the conclusion that the explosion did not result from the encapsulation of water by molten aluminum and that it instead resulted from an explosive material not indigenous to the aluminum pouring machine or the casting process. Moreover, USNR's attorneys did not mention during closing argument any portion of the opinions and information in Traubert's report that had not been presented to the jury through testimony. *See McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1405 (8th Cir. 1994) (noting, in support of a determination that the admission of certain evidence was harmless, that counsel's closing argument made "very little reference" to the evidence in question); *cf. Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 967 (8th Cir. 2011) (stating that the plaintiff's emphasis of certain evidence during closing argument suggested that the evidence materially influenced the jury).

Tony Foster, an expert witness at the trial, presented much of the same information disclosed in the contested reports, stated that his investigation led him to believe that "it was a C-4 explosive that caused this incident," and testified that he did not believe that the explosion was a molten aluminum water explosion. Furthermore, the jury heard testimony indicating that the source of the explosion was eighteen to thirty-six inches from the location where molten aluminum was poured at the plant and that this indicated that the cause of the explosion was unrelated to the liquid aluminum. Additionally, Jacoby testified that there are five observable characteristics typically found after a molten aluminum water explosion of the magnitude of the explosion at the plant but that he found only one of those characteristics present in this case.

In short, the written expert reports were predominantly cumulative of other evidence presented to the jury. *See United States v. Demery*, 674 F.3d 776, 782 (8th Cir. 2011) (concluding that the error in admitting certain testimony was harmless

because the "testimony was largely cumulative of other evidence").  Ultimately, USNR presented substantial evidence to the jury apart from the four reports to support its position that it was not at fault for the explosion.  *See McKnight*, 36 F.3d at 1405 ("The harmful effect of the improperly admitted evidence is reduced where there is substantial evidence in the record beyond the evidence improperly admitted to support the jury's decision.").  After considering the significant overlap between the contested reports and the testimony presented to the jury, we deem harmless any error in admitting the reports and allowing the jury to have them during its deliberations because the reports were not "so prejudicial as to require a new trial which would be likely to produce a different result."  *See Safety Nat'l*, 639 F.3d at 503 (quoting *Paul*, 37 F.3d at 1277).[3]

_____

_____

[3]We reject Clegg's contention that the admission of inadmissible evidence cannot be harmless error if the evidence "is used to support a party's position that is central to the case."  *See, e.g., Kostelecky v. NL Acme Tool/NL Indus., Inc.*, 837 F.2d 828, 830-31 (8th Cir. 1988) (deeming harmless, in a negligence case in which "[l]egal causation was very much in dispute" and the verdict favored the defendant, the admission of a report stating that the plaintiff's own conduct resulted in his injury and that the plaintiff could have avoided injury if he followed instructions, where other reports in evidence reached similar conclusions).